## No. 26661

**Sundance Hills Homeowners Association v. The Board of County Commissioners for Arapahoe County, Colorado; John J. Nicholl, Charles A. Pitts, and Peter D. Smythe, individually, and as County Commissioners for Arapahoe County, Colorado; The Alpert Corporation; Harvey Alpert; Theodore Alpert; and Leland Alpert**

(534 P.2d 1212)

Decided April 28, 1975.                    Rehearing denied May 27, 1975.

Simon, Eason, Hoyt & Malone, P.C., Richard H. Simon, Stephen G. Everall, for plaintiff-appellee.

Ronald S. Loser, for defendants-appellants The Board of County Commissioners for Arapahoe County, John J. Nicholl, Charles A. Pitts and Peter D. Smythe.

Isaacson, Rosenbaum, Spiegleman & Friedman, P.C., Harvey E. Deutsch, Richard E. Mishkin, Jensen, Miles, Miller, Davis & Moorhead, John B. Moorhead, for defendants-appellants The Alpert Corporation, Harvey Alpert, Theodore Alpert and Leland Alpert.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

In early 1973 the Alpert Corporation and the three Alpert brothers filed seven applications for rezoning with the Arapahoe County Planning Commission. Sundance Hills Homeowners Association (Sundance) objected to the requested rezoning of 101 acres of this area from A-1 (agriculture) to R-P Planned Unit Development (PUD), since it would require 10.6 dwelling units per acre. Sundance contended that it would be too high a density to be compatible with the surrounding land uses.[1]

---

[1]An additional 70 acres, to be rezoned at 3.0 dwelling units per acre, is not challenged here, but the effect of that action will be discussed later in this opinion.

After a hearing the Planning Commission favorably recommended the proposed changes to the Board of County Commissioners (the Board). The Board held a public hearing. Considerable opposition was voiced to the proposed rezoning. After taking the matter under advisement, the Board issued a formal resolution granting all the proposed zoning changes except the application for rezoning of approximately one acre on which was contemplated the construction of a gasoline service station.

Sundance filed a complaint in the district court under C.R.C.P. 106(a)(4) seeking review of the Board's decision. It also sought a declaratory judgment that the Arapahoe County Zoning Resolution (the Resolution) concerning PUDs was facially unconstitutional. Sundance alleged the resolution to be special legislation proscribed by *Colo. Const.*, Art. V, Section 25, and also that it denied equal protection of the laws as guaranteed by the Fourteenth Amendment of the United States Constitution.

After appropriate proceedings, the district court held that (1) the Board failed to comply with the notice provisions of the Resolution; (2) the Board considered evidence subsequent to the public hearing in direct contravention of the Resolution; (3) the dwelling density of 10.6 units per acre was incompatible with density rates of the surrounding area; (4) there was no evidence that adequate sewage treatment facilities were available; (5) the Board failed to consider the wishes of the general public; and (6) the PUD ordinance was unconstitutional as Sundance complained. Accordingly, the district court found that the Board had abused its discretion and exceeded its jurisdiction, and so reversed the Board's action. We reverse the district court.

For clarity, further facts will be developed under each issue as discussed.

I.

Prior to the public hearing, notices were both posted and published. All of the notices included correct information regarding the time and place of the hearing, legal descriptions of the property involved, the previous zoning classifications of the parcels, the requested rezonings for the parcels, and the telephone number where additional information about the proposed zoning changes could be obtained. However, all of the *published* notices listed the Alpert *Corporation* as the applicant when in reality the Alpert

*brothers* were the applicants for six of the seven rezoning requests.

The district court voided the commercial and PUD rezonings on the basis of improper notice, stating that the error was one of substantiality because the name of an applicant may well alert the general public to the type or quality of the proposed development.

■ In zoning, notice should unambiguously set forth the information which would give adequate warning to all persons whose rights could be adversely affected by any action of the zoning entity, so they may appear and have an opportunity to be heard. At a minimum a fair notice must give the time, place and subject matter of the meeting. It must also clearly apprise the public that the forthcoming public hearing relates to a proposed zoning change and the nature of the change. *Grant v. Board of the County Commissioners,* 164 Colo. 69, 432 P.2d 762 (1967); *Holly Development, Inc. v. Board of County Commissioners,* 140 Colo. 95, 342 P.2d 1032 (1959).

In this case approximately 35 people attended the Board meeting; none indicated he was misled by the notice. At least five separate homeowners' associations, including Sundance, were there. Numerous individuals took the time to communicate their opinions in writing. At least one group organized opposition to the applications and was represented by counsel at the hearing.

The Resolution does not require the name of the applicant to be set forth in the notice required to be published. The posting of the notice of the proposed change on a sign to be erected and maintained on the affected property requires the name of the applicant and that was listed as Harvey Alpert, et al.

■ We conclude that the publication was in conformance and did not deprive participants of procedural due process, and therefore did not affect the jurisdiction of the Board to proceed with the public hearing.

II.

During the public meeting, a representative of the Cherry Creek school district was called as a witness. Although essentially agreeing with the pupil impact statistics and overcrowding solution presented by the Alperts the witness expressed a neutral position whether the zoning should be granted. Subsequent to the

public meeting, but prior to the adoption of any formal resolution, the witness sent the Board a letter on behalf of the school district. This letter reflects a much more open acceptance of the Alperts' presentation.

The Board formally adopted the PUD proposal. Thereafter, a concerned citizen sent a request to the chairman of the Board, asking him to justify the decision. In his reply, the chairman quoted with approval from the letter which had been received after the close of the public evidence.

The district court found that the acceptance and consideration of evidence subsequent to the zoning hearing was a violation of the Board's procedures and therefore constituted an abuse of discretion.

The Resolution, Chap. VI, Art. C, 3(g) provides that "At the time of the public hearing, the Board of County Commissioners shall hear *all* evidence for and against the requested zone change. After due deliberation, the Board of County Commissioners shall render a decision which shall become a matter of public record." (Emphasis added.)

It is true that the Board did not strictly comply with the regulation. However, a comparison of the letter with the evidence presented at the hearing — which the public could cross-examine — reveals that the letter primarily served to verify statistics already presented. Thus, although the letter announced a positive change in the school district's position, it was only based upon the district's more thorough analysis of the public information.

Furthermore, a prior letter written by the same witness and sent to four homeowners' associations, including Sundance, pre-warned them of the school district's intention to statistically verify the Alperts' school impact statement at a later date. No one made timely objection to this procedure, despite opportunity to do so.

■ Viewed in the totality of the circumstances the Board's handling of the school district letter was an insignificant aspect of an extensive process. Although the Board failed to follow precisely its own ordained procedure, we do not believe that anyone was thereby deprived of due process. *See McArthur v. Zabka,* 177 Colo. 337, 494 P.2d 89 (1972).

### III.

■ The district court held that the proposed rezoning of the 101 acres was incompatible with the surrounding land uses. We do not agree.

The Sundance homeowners live in a traditional residential area of an average of 3.0 dwelling units per acre. To the south is the Alperts' additional 70 acres, a buffer area which also was zoned at 3.0 density. Further southward is the 101 acres, to be zoned at 10.6 density. To the east is 175 acres, zoned for 11 units per acre.

The Arapahoe County Comprehensive Master Plan provides that most of the area within the 101 acre parcel has a proposed density range of 4.0 to 11.0 dwelling units per acre.

The 101 acres has a high density zone bordering it to the east, and a buffer zone between it and Sundance. Thus, the Alperts' proposed development of 10.6 dwelling units per acre is compatible with the surrounding area.

The court is not the fact finder in this proceeding. The zoning grant by the Board is authorized by the master plan. Since the zoning is supported by the evidence, the decision will not be disturbed on review.

### IV.

■ The district court erred in making a finding that, because adequate sewage facilities were unavailable at that time such deficiency was fatally defective to the proposed rezoning grant.

The Resolution requires that before any building begins, the developer must comply with certain Arapahoe County subdivision regulations. These regulations contain multi-level checks and balances to assure that any development will be in the best interest of the public. It is at that point that the availability of adequate sewage facilities must be finally resolved, not at the rezoning state.

The court cannot anticipate a future abuse of discretion by the Board. It may be assumed that the Board will follow its own regulations and thoroughly consider the impact which the project's sewage will have on the immediate vicinity and the surrounding metropolitan area. Sundance has not in any way been prejudiced; it will be able to protest — should that be necessary — when the Board again considers the issue.

## V.

A review of the record reveals that competent and substantial documentary and testimonial evidence supported the Board's decision to grant six of the seven zoning requests. By no means was the evidence uncontested; there was loud and energetic opposition. While general public opinion and contradictory compilations are important and to be encouraged, this kind of a decision is not a popularity contest. The Board is charged with the final decision making.

Our role is not and should not be to sit as a zoning board of appeals. *Garrett v. City of Littleton,* 177 Colo. 167, 493 P.2d 370 (1972); *Baum v. Denver,* 147 Colo. 104, 363 P.2d 688 (1961). The issues argued were fairly debatable. *Radice v. New York,* 264 U.S. 292, 44 S.Ct. 325, 68 L.Ed. 690 (1923); *Board of County Commissioners v. Simmons,* 177 Colo. 347, 494 P.2d 85 (1972). It cannot be said that the zoning decision of the Board was not supported by competent evidence. Therefore there was no abuse of discretion. The district court erred in substituting its judgment for that of the Board. *Ford Leasing Development Co. v. Board of County Commissioners,* 186 Colo. 418, 528 P.2d 237 (1974); *Simmons, supra; Marker v. Colorado Springs,* 138 Colo. 485, 336 P.2d 305 (1959).

## VI.

Sundance alleges that the record of the Board is devoid of findings or even a general discussion by the Board of the underlying rationale for its decision, thus precluding efficient judicial review. *Bauer v. City of Wheat Ridge,* 182 Colo. 324, 513 P.2d 203 (1973); *cf. Pomponio v. City of Westminster,* 178 Colo. 80, 496 P.2d 999 (1972).

The Board did make only findings of ultimate facts. Holding a lay board such as the Commission to strict legalistic findings would be highly technical. We have before us a very complete record, and having read it we are able to conclude that the Board's decision is amply supported by the evidence. We quote with approval from a Rhode Island case which said:

". . . it does not follow that a decision of the zoning board will necessarily be reversed absent express findings of the ultimate facts upon which the decision must rest. It is well settled that, if

upon an examination of the record this court can find from the evidence contained therein that the board necessarily acted on the basis of such findings, although not expressed, in the interests of practical justice we will not reverse the decision. Where a board of review acts affirmatively upon an application for an exception the granting of which is conditioned upon the finding of ultimate facts prescribed in the ordinance, we will hold, in the absence of an express finding thereon, that there is an implicit finding in the decision of these prerequisite facts when the state of the evidence is such as would warrant the making of such finding by the board . . . ." *Cugini v. Chiaradio,* 96 R.I. 120, 189 A.2d 798 (1963). *See also Dillon Companies, Inc. v. City of Boulder,* 183 Colo. 117, 515 P.2d 627 (1973).

The Board's actions are not good administrative practice. 3 *R. Anderson, American Law of Zoning,* § 16.44 (1968). It is not unreasonable to expect the Board to set out in summary detail the reasons for its decision. To neglect to do so makes the job of the reviewing court more difficult — but not impossible. There was no prejudicial error in this case.

### VII.

The district court held that the PUD, the Resolution, Chap. II, Art. G and S, was unconstitutional as special legislation within the meaning of *Colo. Const.,* Art. V, Sec. 25 because it did not contain adequate guidelines and standards. It further held that the ordinance denied equal protection of the laws.

█ The Resolution is a legislative enactment which is presumed valid. Sundance had the burden of proving it invalid beyond a reasonable doubt. *Ford Leasing, supra; Simmons, supra; Baum, supra.* That had to be done with "clear and convincing" evidence. *City of Greeley v. Ells,* 186 Colo. 352, 527 P.2d 538 (1974).

█ Sundance alleged facial unconstitutionality in its complaint, and introduced the Resolution in the lower court. Sundance presented no other evidence on the issue of constitutionality. Mere allegations of contrary probabilities is insufficient to overcome the constitutional presumption. By its actions Sundance refused to assume and did not carry its burden of proof. The conclusions of the district court were therefore erroneous.

Although we have considered all other allegations of error, in view of our decision we need not discuss them.

Judgment reversed.