Arthur R. HUDSPETH, William Mack, John M. Grace, William A. Yeager, Charles G. Williams, Vernon F. Summers, and Quentin R. Cowman, Plaintiffs-Appellants,

v.

The BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF ROUTT, State of Colorado, Doug Boggs, Robert E. McKune, and Pat Holderness, and Schmidt-Tiago Construction Company, Defendants-Appellees.

No. 82CA0584.

Colorado Court of Appeals.

July 7, 1983.

Holloran, Burris & Stickler, Michael L. Holloran, Steamboat Springs, for plaintiffs-appellants.

Mattlage, Lettunich & Vanderbloemen, John A. Vanderbloemen, Steamboat Springs, for defendant-appellee Bd. of County Com'rs of Routt County.

Ratcliffe & Chamberlin, Thomas J. Chamberlin, Steamboat Springs, for defendant-appellee Schmidt-Tiago Const. Co.

STERNBERG, Judge.

Plaintiffs appeal the trial court's dismissal of their complaint in which they sought review of the decision by defendant Board of County Commissioners to grant a special use permit to defendant Schmidt-Tiago Construction Company. We affirm.

Schmidt-Tiago applied for a special use permit for open-pit gravel excavation in an area of Routt County which was zoned for agriculture-forestry and residential uses. As conditions for granting a special use, the Routt County Zoning Resolution required that:

"[S]uch use does not create any danger to safety in surrounding areas, does not cause water pollution, and does not create offensive noise, vibration, smoke, dust,

odors, heat, glare, snow storage problems, does not aggravate an existing wildfire hazard or create a wildfire hazard to structures on adjacent property, does not aggravate an existing flood hazard or increase flood hazard to upstream or downstream properties, and does not create or increase geologic hazard or subject adjacent properties to geologic hazard, or other objectionable influences beyond the boundaries of the property on which such use is located."

Additionally, the resolution required that the use not destroy visual amenities, that it include a plan for land reclamation, and that it was to be in conformance with industrial performances standards promulgated by the county.

A similar application had been denied in 1979 and the Planning Commission recommended denial of this one as well, because the use did not conform with the requirements of the zoning resolution.

Plaintiffs, who are landowners in the immediate area, appeared at a public hearing to express their objection to the permit. They objected primarily to the resulting dust and noise, the threat to wildlife, and possible contamination of ground water. They also contended that the view of the valley from Rabbit Ears Pass would be destroyed. Representatives from Schmidt-Tiago expressed their view that dust, flooding, and water contamination could be controlled, and submitted a land reclamation plan. At the close of the hearing the Board took the matter under advisement, and directed the Planning Commission to prepare a memorandum summarizing the arguments on both sides.

The resulting memorandum, containing the relevant zoning regulations, statements of policy from the county master plan, and a number of conclusions as to whether the procedures had been followed, the conditions had been met, and opposing comments had been supported, was considered by the Board at a closed session. This session was attended by the author of the memorandum and by the county attorney in his advisory capacity.

Following the closed session, the Board went into an open meeting on the record. The comments indicate that the facts and arguments were considered and weighed during the closed session but that no decision had been reached. At the open meeting, various commissioners expressed their concerns as to the adverse impact of the use but indicated that they would rely on assurances that the impact would be mitigated.

After those comments, they voted to approve the application subject to the condition that all requirements of the zoning resolution with respect to noise, pollution, etc., be incorporated into the permit as conditions for the continuation of the permit.

Plaintiffs brought this action under C.R.C.P. 106(a)(4), alleging that the action taken by the Board violated the open meetings statute, was an abuse of discretion, and was in excess of their authority because of various procedural irregularities. They brought a claim for declaratory relief and one for violation of their rights to due process. The court concluded that no decision had been reached in the closed session and that the action was not void for that reason. It also concluded that there was sufficient evidence before the Board to support its conclusion that the zoning regulations would be met, that the conditions in the permit satisfied those regulations, and that the Board's findings were adequate to support its conclusions. The court also dismissed plaintiffs' other claims for relief. We agree with these rulings.

I.

On appeal plaintiffs first argue that the presence of the county attorney during the Board's deliberations was unfair; that the Board's consideration of the planning administrator's memorandum amounted to taking new evidence in a closed meeting; and that the decision in open session was merely a "rubber stamp" of a decision previously reached. We do not agree with this interpretation of the events.

Section 29–9–101(1), C.R.S.1973, states that all meetings of any board, commission,

committee, or authority of a political subdivision of the state supported by law in its activities are declared to be public meetings. It further states that such entities may go into executive session for consideration of confidential matters "but shall not make final policy decisions, nor shall any resolution, rule . . . or formal action . . . be adopted or approved at any session which is closed to the general public."

This statute prohibits "rubber stamping" at public meetings decisions previously made in private. *Bagby v. School District No. 1,* 186 Colo. 428, 528 P.2d 1299 (1974). It has, however, been interpreted to permit review and deliberation upon evidence in a closed session so long as no final action is taken. *Einarsen v. City of Wheat Ridge,* 43 Colo.App. 232, 604 P.2d 691 (1979).

Unlike the attorney for the school board in *Weissman v. Board of Education,* 190 Colo. 414, 547 P.2d 1267 (1976), and *Lockhart v. Board of Education,* 668 P.2d 959 (Colo.App. No. 80CA1191, announced February 24, 1983), the county attorney did not serve a partisan role in these proceedings. Thus, his presence did not constitute a danger of inappropriate influence. The Board expressly stated that it did not come to a decision during its closed session and, consistent with the purpose of the Public Meetings Act, the discussion on the record which followed gave the public the benefit of the motivations and policy arguments which led to the final decision.

## II.

We do not agree with plaintiffs' argument that the decision was an abuse of discretion or exceeded the Board's authority.

Central to our conclusion is the concept that, in review of quasi-judicial actions under C.R.C.P. 106(a)(4), a decision is upheld if the ultimate findings are supported by any competent evidence. *Cooper v. Civil Service Commission,* 43 Colo.App. 258, 604 P.2d 1186 (1979). The absence of express findings by a lay board does not affect the validity of the decision where the necessary findings are implicit in the action taken. *Sundance Hills Homeowners Ass'n v. Board of County Commissioners,* 188 Colo. 321, 534 P.2d 1212 (1975).

Starting from those premises, we conclude that by granting the special use permit subject to the conditions in the resolution the Board found that the use would comply with the zoning resolution. With conflicting testimony in the record, the action of the Board must be upheld.

The Board's failure to follow the zoning resolution requirement of a reclamation bond does not lead to a contrary result. No county may adopt an ordinance that is in conflict with any state statute. Section 30-15-411, C.R.S.1973 (1982 Cum.Supp.). In view of the legislative declaration of state policy with respect to both mining and reclamation, the Colorado Mined Land Reclamation Act proscription of any political subdivision requiring any performance warranty for mining operations must, therefore, control. *See* §§ 34-32-102 and 34-32-109(6), C.R.S.1973 (1982 Cum.Supp.).

Nor does the Board's decision to grant the permit in spite of its 1979 decision to deny it, or its consideration of the county master plan, change the result.

Plaintiffs argue that the Board was bound by its reasons for denying the permit in 1979, so it could not now grant the permit when circumstances had not changed, and that it could not consider the policies stated in the master plan because it was not a regularly enacted ordinance. Because Routt County is not a "populous county," it was not required to adopt a master plan for extraction of minerals. *See* §§ 34-1-302(3) and 34-1-304(1), C.R.S. 1973. The only guidelines the Board was obligated to follow were those in the zoning resolution, *Bauer v. City of Wheat Ridge,* 182 Colo. 324, 513 P.2d 203 (1973), and reasons for denying the permit in 1979 do not amount to amendments to the zoning resolution. By the same token, because the policies expressed in the "unofficial" master plan were consistent with § 34-1-304, C.R. S.1973, we agree with the trial court's con-

clusion that informal consideration of those guidelines was not an abuse of discretion.

### III.

There is no merit to plaintiffs' claim that their remaining causes of action should not have been dismissed.

Plaintiffs requested a declaration that the action was null and void and claimed that there was a violation of their constitutional right to due process for the same reasons which underlay their claim for C.R. C.P. 106 review. All claims asserted rested upon the reasonableness of the Board's application of the criteria in the zoning resolution. C.R.C.P. 106 review was, necessarily, their exclusive remedy. *See Bonacci v. City of Aurora,* 642 P.2d 4 (Colo.1982); *Snyder v. Lakewood,* 189 Colo. 421, 542 P.2d 371 (1975).

Judgment affirmed.

VAN CISE and KELLY, JJ., concur.