**SOUTH CREEK ASSOCIATES, a Colorado general partnership, Plaintiff–Appellant,**

**v.**

**BIXBY & ASSOCIATES, INC., a Colorado corporation, d/b/a Bixby Day School, Defendant–Appellee.**

**No. 85CA1515.**

Colorado Court of Appeals, Div. I.

Dec. 24, 1987.

Rehearing Denied Jan. 21, 1988.

Certiorari Granted (South Creek) April 18, 1988.

Berenbaum & Weinshienk, Barry M. Permut, Amy Therese Loper, Denver, for plaintiff-appellant.

Martin, Knapple, Humphrey & Tharp, Andrew M. Gaydosh, Boulder, for defendant-appellee.

PIERCE, Judge.

Plaintiff, South Creek Associates, appeals the summary judgment entered in favor of defendant, Bixby and Associates, Inc. (Bixby). The trial court found that Bixby was entitled to parking privileges upon plaintiff's property. We affirm.

In 1977, McStain Enterprises (McStain) proposed the development of a shopping center within the city of Boulder. As owner of the entire area of land, McStain filed a formal application for the development of a planned unit development (P.U.D.). A detailed plan was submitted and approved on December 1, 1977, by the Planning Board.

The P.U.D. plan proposed the development of a shopping center, residential area, and a private school. The school was to be located next to a parking lot adjacent to the shopping center. In addition to on-site parking for the school, the plan provided that the adjacent parking lot was intended to be available for the mutual use of the school and the shopping center tenants.

In April 1978, McStain and the City of Boulder entered into a subdivision agreement whereby McStain agreed to complete all conditions of the P.U.D. plan. The agreement stated: "development of this subdivision is controlled by an approved Planned Unit Development (P77–5) approved by the Planning Board with conditions ... in addition to City Land use and Zoning Regulations." This agreement was later recorded with the Boulder County Clerk and Recorder's Office, but it made no reference to the school's asserted right to use the parking facility.

Thereafter, a plat was designed and recorded. Although this plat showed numerous easements and encumbrances throughout the P.U.D. area, there was nothing indicating the mutual use of the parking facility.

Bixby subsequently acquired that portion of the property described in the P.U.D. that was designated for a private school. At that time, in 1978, the only documents recorded were the subdivision agreement and the plat, neither of which made any reference to Bixby's asserted right to park on the adjacent lot.

In 1982, McStain transferred the interest in the shopping center to the plaintiff by way of warranty deed. Included in the transfer were the interests in the adjacent parking facility. The deed conveyed the property free of all encumbrances excepting only those matters contained in an exhibit attached to the deed *which specifically mentioned the subdivision agreement.* This exhibit contained numerous references to covenants, restrictions, easements, and other encumbrances of the property. However, although reference was made to the subdivision agreement, nothing in the attachments made any reference to the mutual use of the parking facility for the benefit of the school.

Subsequently, after completion of the project, Bixby began and continued using the disputed parking facility. After numerous, unsuccessful attempts were made to prohibit Bixby's use of the property, plaintiff brought this action seeking to quiet title to the property. Plaintiff argued that no easement was ever recorded in favor of Bixby, and therefore, plaintiff had no notice of the school's claimed right to use the parking facility. Bixby countered that it was entitled to use the parking area by virtue of statements contained in the P.U.D. plan.

Both parties then moved for summary judgment. The trial court found that the mention of the P.U.D. was sufficient notice of Bixby's asserted right to use the parking facility and, accordingly, entered summary judgment in favor of Bixby.

Bixby asserts its right to park upon plaintiff's property by virtue of the following statement contained in the P.U.D.:

"Six spaces will be provided on-site for the exclusive use of the school personnel.

In addition, the adjacent parking lot will be available for the mutual use of the school and the commercial facility."

Also, defendant points to another sentence in the P.U.D. which provides:

"The parking on the southeast portion of the site is intended for the mutual use of the school and the shopping center tenants."

Section 24–67–106(2), C.R.S. (1982 Repl. Vol. 10) of the Planned Unit Development Act of 1972 provides that:

"All provisions of the plan shall run in favor of the residents, occupants, and owners of the planned unit development, but only to the extent expressly provided in the plan and in accordance with the terms of the plan...."

Based mainly on information contained in the deed, the trial court ruled that plaintiff was on notice of these parking restrictions. We agree.

The deed by which plaintiff obtained the property mentioned the recorded P.U.D. subdivision agreement which, in turn, referred to the P.U.D. There is no dispute that plaintiff had notice of the P.U.D.; but rather, it asserts no actual notice of the specific parking provision. However, we hold that once having been put on notice, it was incumbent upon plaintiff to peruse the provisions of the P.U.D. which contained these parking restrictions. *Page v. Fees–Krey, Inc.*, 617 P.2d 1188 (Colo.1980).

The P.U.D. was properly filed and, upon its adoption, became, in effect, a rezoning even though there was no specific rezoning ordinance passed. *See Tri–State Generation & Transmission Co. v. City of Thornton,* 647 P.2d 670 (Colo.1982); *Sundance Hills Homeowners Ass'n v. Board of County Commissioners,* 188 Colo. 321, 534 P.2d 1212 (1975). The adoption of the plan thereafter restricted the use of the land to the provisions of the plan. *See Moore v. City of Boulder,* 29 Colo.App. 248, 484 P.2d 134 (1971). Thus, Bixby could enforce the parking restrictions at law or in equity. Section 24–67–106(2), C.R.S. (1982 Repl.Vol. 10).

The judgment is affirmed.

METZGER, J., concurs.

VAN CISE, J., dissents.

VAN CISE, Judge, dissenting:

I respectfully dissent.

From the decision of the trial court and the majority opinion of this court, it would appear that there is one clearly identifiable and available key document involved in this case—"the P.U.D. plan." There is no such document. Instead, the city planning department file contains numerous documents, no one of which is specifically a "plan" or which, standing alone, could be considered to be the controlling instrument.

I.

In 1977, McStain Enterprises, Inc. (McStain), pursuant to the City of Boulder's planned unit ordinance, filed with the city planning department an application to develop certain land owned by it as a planned unit to be known as "South Creek Village," consisting of a residential area, a shopping center, and a private school. Filed with the application were the information and materials required by the city's ordinance. One document submitted with the application, the "Statement of Intent," contained among other things, the following three sentences:

"Six spaces will be provided on-site for the exclusive use of the school personnel. In addition, the adjacent parking lot will be available for the mutual use of the school and the commercial facility.

. . . .

"The parking on the southeast portion of the site is intended for the mutual use of the school and the shopping center tenants."

The planning board issued a "Notice of Disposition" in which it approved McStain's application subject to seven conditions, none of which pertained to parking. The board's decision was not reviewed by the city council, and no ordinance pertaining to the tract was enacted.

In April 1978, McStain entered into an agreement with the city (the subdivision agreement). The "recitals" therein provided that:

"[D]evelopment of this subdivision is controlled by an approved Planned Unit Development ... approved by the Planning Board with conditions on December 1, 1977, in addition to the City Land Use and Zoning Regulations...."

The "covenants" portion of the agreement dealt with curbs, streets, gutters, storm drainage, sewers, and water lines for the South Creek Village Subdivision. In it, McStain agreed that it would "complete all conditions stated on the P.U.D." and would complete all improvements "in accordance with the plans as approved." There was no mention of parking in this agreement.

Thereafter, pursuant to the city's subdivision regulations, a subdivision plat was presented to and approved by the city council. Although this plat showed numerous easements and encumbrances, there was nothing in it indicating any mutual use of the parking facility.

Only the subdivision agreement and the plat were recorded. No other document pertaining to the development of the subdivision appears of record, and neither of the documents that were recorded contains any reference to parking for the school.

In November 1978, McStain conveyed to Bixby's predecessor the portion of the property designated for a private school and its on-site parking facilities. In the deed, McStain gave it "a non-exclusive easement for ingress and egress ... over and across ... (a) 'Public Access Easement' on Lot P–3 [adjacent to Bixby's land] ... [and] (b) 'Private Street'...." No easement for parking was contained in the deed.

The shopping center property, including the Lot P–3 parking facility adjacent to the school, was acquired by plaintiff, South Creek Associates (South Creek) in 1982. The warranty deed conveying the land contained an exception for "the matters set forth in Exhibit A attached hereto and incorporated herein by this reference." The attached exhibit referred to the subdivision agreement, easements in the plat, and other matters not relevant here. Neither the deed nor the attached exhibit made any reference to "P.U.D." or "P.U.D. plan," nor was there any statement about any interest or right in Bixby or the school to any use of the parking facility.

It is undisputed that Bixby did not acquire any interest in South Creek's property by any recorded deed, agreement, or other instrument. It is also undisputed that when South Creek took title to the shopping center property, it had no actual notice of the documents contained in, or filed in connection with, McStain's planned unit application or of the claim that Bixby asserts in this case.

South Creek's first knowledge of Bixby's claim of a right to access and use of the Lot P–3 parking area arose when South Creek, as owner, attempted to have trespassing motor vehicles removed from the parking area. At that time, Bixby asserted the right to park in the shopping center on the basis of the three sentences contained in the unrecorded "Statement of Intent" included with McStain's planned unit application. To clear its title to the shopping center from any claim of possessory or use rights by Bixby, South Creek instituted this action. Bixby counterclaimed, seeking a decree that it has a right to access and use of the parking facility located on Lot P–3.

On the above facts, both parties moved for summary judgment, and the judgment in favor of Bixby that is at issue on this appeal was entered.

## II.

South Creek first contends that the "Statement of Intent" which does not contain words of present conveyance, does not describe the interest conveyed, and does not appear in any recorded instrument affecting title, cannot create a parking easement or license. I agree.

The transfer of an interest in real property requires the formality of operative words of present conveyance sufficiently describing the particular property. *See Harrison v. Everett*, 135 Colo. 55, 308 P.2d

216 (1957); *Lambert v. Murray,* 52 Colo. 156, 120 P. 415 (1912). The mere statement contained in one unrecorded document, the "Statement of Intent," that certain parking areas are intended for the mutual use of the school and the commercial facility does not meet even the most rudimentary requirements necessary to convey an interest in real estate. Such a statement reveals no present intent to convey. Neither the dominant nor the servient tenement is described. And, the time during which the grant continues is not set forth. The "Statement of Intent" is nothing but a document expressing that McStain intended, at some future time, to grant to the school an easement on undefined portions of the commercial facility. That intent was never effected.

Nor can the "Statement of Intent" be construed to create a license. *See Lehman v. Williamson,* 35 Colo.App. 372, 533 P.2d 63 (1975).

### III.

South Creek also contends that, even if the "Statement of Intent" gave rise to some right to park, Bixby is expressly precluded by Colorado's recording statutes from enforcing that interest against South Creek, a bona fide purchaser of the servient estate. Again, I agree.

Section 38–35–109, C.R.S. (1982 Repl. Vol. 16A) (in effect at all times pertinent to this case) provides that no instrument or document conveying, encumbering, or affecting the title to real property "shall be valid as against any class of persons with any kind of rights, except between the parties thereto and such as have notice thereof, until the same is deposited with [the] county clerk and recorder." Therefore, even if the "Statement of Intent" can be construed as an instrument affecting title, in order to bind South Creek, which had no actual knowledge of its existence, Bixby was required at least to have recorded the "Statement of Intent."

### IV.

Bixby argues first that South Creek had constructive notice of Bixby's parking rights by reference to the statement in the recorded subdivision agreement that the "development of this subdivision is controlled by an approved Planned Unit Development ... approved by the Planning Board," and second that the recording statute is irrelevant because the right arose out of a zoning ordinance and purchasers of property always acquire their rights subject to zoning. I disagree.

As to the first argument, § 38–35–108, C.R.S. (1982 Repl.Vol. 16A), provides:

"When a deed or any other instrument in writing affecting title to real property has been recorded and such deed or other instrument contains a recitation of or reference to some other instrument purporting to affect title to said real property, such recitation or reference shall bind only the parties to the instrument and shall not be notice to any other person whatsoever unless the instrument mentioned or referred to in the recital is of record in the county where the real property is situated. Unless the same is so recorded, no person other than the parties to the instrument shall be required to make any inquiry or investigation concerning such recitation or reference."

It is undisputed that none of the numerous documents in, and included with, the planned unit application, including the "Statement of Intent" and the three sentences pertaining to school parking contained therein, were recorded. Moreover, there is no recorded document which even makes reference to the "Statement of Intent." The only two recorded documents which pertain to this planned unit development are the plat and the Subdivision Agreement. The plat is silent as to parking and as to the existence of a planned unit development. The subdivision agreement specified that "development of this subdivision is controlled by an approved Planned Unit Development ... approved by the Planning Board with conditions ..." There are seven "conditions" contained in the board's approval document, the unrecorded Notice of Disposition, but none of these conditions pertain to parking. Under the statute, mere reference to an unrecord-

ed approved planned unit development is insufficient.

The majority, however, holds that South Creek was put on notice by the provisions in the deed (even though there is no mention of "P.U.D." in the deed or in the attached exhibit), and concludes, therefore, that it was incumbent upon South Creek "to peruse the provisions of the P.U.D. which contained these parking restrictions" (whatever the "P.U.D." might be). To have complied with this requirement, South Creek would have to have examined the voluminous mass of documents submitted by McStain with or in addition to its planned unit application to the planning department, and any other documents from other persons or agencies contained in the city's planning file. Only by so doing could South Creek have determined the nature and extent of any statements that might have an effect on its prospective ownership rights. Such an onerous burden is contrary to the spirit of the recording acts, and is not required by law. *See* § 38–35–109(1), C.R.S. (1982 Repl.Vol. 16A).

Bixby's second argument, and the majority's adoption of it, fails because there was no zoning or rezoning ordinance introduced or adopted pertaining to this particular property. The plan was approved by the planning board, not the city council. Therefore, there was no "rezoning." *Cf. Tri–State Generation & Transmission Co. v. City of Thornton*, 647 P.2d 670 (Colo. 1982), and *Sundance Hills Homeowners Ass'n v. Board of Commissioners*, 188 Colo. 321, 534 P.2d 1212 (1975), involving judicial review of a city rezoning ordinance and of a county rezoning resolution, respectively. In the instant case, a knowledge of the Boulder zoning ordinances and regulations would have been of no assistance to a prospective buyer of this particular property. And, to hold that an approval of a planned unit application by the planning board, without public hearings and official notice or action by the city's governing body, is the equivalent of rezoning ignores the entire statutory rezoning process prescribed in §§ 31–23–304 and 31–23–305, C.R.S. (1986 Repl.Vol. 12B).

V.

Bixby also bases its claim of a right enforceable against South Creek on its interpretation of the provisions of § 24–67–101, et seq., C.R.S. (1982 Repl. Vol. 10), the Planned Unit Development Act of 1972. However, this argument ignores the provisions concerning enforceability.

That Act states at § 24–67–106(2):

"All provisions of the plan shall run in favor of the residents, occupants, and owners of the planned unit development, but only to the extent expressly provided in the plan and in accordance with the terms of the plan, and, to that extent, said provisions whether *recorded* by plat, covenant, easement, or otherwise, may be enforced at law or in equity...." (emphasis added)

Hence, this statutory provision requires that, to be enforceable against other owners, the provisions of the plan must be "recorded by plat, covenant, easement, or otherwise." It gives enforcement rights arising out of *recorded* documents to anyone in the planned unit.

Having failed to record or otherwise give notice to South Creek, Bixby may not now rely upon the two sentences in the unrecorded "Statement of Intent" contained in the voluminous documents accompanying the planned unit application to establish its right to use the shopping center parking facility.

The judgment should be reversed, and the cause should be remanded with directions to enter judgment quieting title in favor of South Creek as it requested.