24CA1391 McCullough v Grand Junction 05-29-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1391
Mesa County District Court No. 22CV30352
Honorable Valerie J. Robinson, Judge

---

Claire McCullough, Sara Woods, and Daniel Woods,

Plaintiffs-Appellants,

and

Richard McCreanor,

Plaintiff,

v.

The City of Grand Junction, The City of Grand Junction City Council, and Kettle Capital, LLC,

Defendants-Appellees.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE SCHUTZ
Welling and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 29, 2025

---

Drew Moore, Grand Junction, Colorado, for Plaintiffs-Appellants

No Appearance for Plaintiff

John P. Shaver, City Attorney, Jamie B. Beard, Assistant City Attorney, Grand Junction, Colorado, for Defendants-Appellees The City of Grand Junction and The City of Grand Junction City Council

Dufford Waldek, Shelly S. Dackonish, Scott D. Goebel, Grand Junction, Colorado, for Defendant-Appellee Kettle Capital, LLC

¶ 1    Claire McCullough, Sara Woods, and Daniel Woods (collectively, the neighbors)[1] appeal the district court's judgment affirming a City of Grand Junction (the City) resolution, passed by a vote of the City of Grand Junction City Council (council), approving a rezoning application filed by Kettle Capital, LLC (developer) (collectively, the Defendants). We affirm.

## I.    Background and Procedural History

¶ 2    This dispute centers around the rezoning of an approximately fifteen-acre parcel of property located in the Redlands area of Grand Junction. The Redlands are bordered by the Colorado River, the Colorado Monument, and the Lower Red Canyon, which serves as a wildlife corridor.

¶ 3    The subject property is currently improved with a single-family residence. It is bordered by Broadway on the south, and an elementary school to the north. The eastern border of the property is a designated floodplain known as the Red Canyon Wash, and further east are single-family residences zoned Rural Residential, which permits one dwelling unit per five acres. The parcel is

---

[1] Richard McCreanor was identified as a plaintiff in the district court, but is not a party to the appeal.

bordered on the west by single-family residences, as is the area south of Broadway.

¶ 4    In March 2022, the developer submitted a rezoning application proposing to convert the property from the existing R-2 zone district, which allows for two dwelling units per acre, to an R-5 zone district, which allows multifamily housing units.

¶ 5    In Grand Junction, when a rezoning is sought, the City's planning director is required to review the application and make a recommendation to the planning commission whether the request should be approved.  Grand Junction Mun. Code §§ 21.02.080, 21.02.140(b) (repealed effective Dec. 20, 2023) (hereinafter G.J.M.C.).[2]  The planning commission receives input at a public hearing.  The planning commission then makes a recommendation to the council.  *Id.*

¶ 6    The council ultimately decides whether to approve the rezoning application.  *Id.*  If the planning commission recommends

_____

[2] We note that since the hearings in this case, section 21.02.140 has been repealed or relocated in the G.J.M.C.  The record does not contain copies of the pertinent sections of the Code as it existed in 2022.  But the parties' briefs agree on the substance of the applicable provisions, so we draw our citations to the 2022 Code from their briefs.

denial of a rezoning application, the applicant must secure the votes of at least five of the six councilmembers in order to prevail on the application. *Id.* § 21.02.120(e).

¶ 7      In May 2022, the developer held a virtual meeting to introduce the rezoning request to the community and answer questions. The meeting lasted about thirty minutes and was attended by ten residents. After the meeting, Scott Peterson — a senior planner for the City — prepared a staff report evaluating the application. The report recommended approving the rezoning application, concluding that it was consistent with the vision, goals, and policies of the One Grand Junction Comprehensive Plan (Plan), and met four out of the five criteria contained in G.J.M.C. section 21.02.140(a)(1) to (5).

¶ 8      A number of interested parties provided written comments prior to the hearing, and members of the public also made statements at the planning commission meeting. Numerous people who lived close to the property spoke against the requested rezoning. Among other concerns, they stated that the housing density enabled by the proposed rezoning was inconsistent with the surrounding neighborhoods and would be detrimental to wildlife in the area, improperly burden the Red Canyon Wash and related

3

wetlands, and compromise the pastoral setting of some of the surrounding properties. After the hearing, a quorum of the planning commission voted 4-0 in favor of recommending that the council deny the application.

¶ 9 In July, the council scheduled a public meeting to consider the application. After learning that only five of six councilmembers were present, the developer requested a continuance of the hearing, which the council granted.

¶ 10 The hearing took place in August. Over the course of approximately forty-five minutes, the developer's engineer, City staff, and community members addressed the propriety of the application. Five community members, including one of the neighbors, requested that the council deny the application. The neighbors assert that at the hearing the developer and Peterson used about twice as much time as that used by members of the public.

¶ 11 Before voting on the application, the mayor made the following statement and findings:

> I just want to remind us exactly what it is
> we're deciding here tonight. . . . [T]here are
> processes in place . . . such as the [Plan] that

have gone through the process of making sure that nothing inappropriate is . . . being put next to things. . . . [W]hat we're here to decide tonight specifically is whether or not the request by the [developer] meets the criteria and the ordinances that are in place and that have been decided and voted on by City Council. And that essentially [is] the law of our city, the law of the land here. And what we're essentially determining is whether or not the boxes have been checked. . . . We are not here to make an emotional decision. We are here to make a very objective decision, which is pretty black and white. And that's whether or not [the application] meets the criteria of the Zoning and Development Code and whether or not this meets the [Plan]. And what I heard this evening is that four of the five zoning and development criteria were met or are met by this, and only one has to be met in order for this to move forward. So, the number of criteria does not matter, but I think it's important to point out that four of five are met here and also four of the [Plan's] principles are addressed here. To me, this is a pretty cut and dry decision.

I find the boxes are checked and that is . . . that's our role here. . . . What we're being asked to determine is whether or not this meets the [Plan] principles and the criteria of Designing and Development Code. And I find that it has been.

The council voted 5-1 to approve the application.

¶ 12    The neighbors sought district court review of the council's

decision under C.R.C.P. 106(a)(4). They argued that the council

5

violated their due process rights by failing to give them a meaningful opportunity to be heard and did not meaningfully consider their concerns. The neighbors also argued that the council misinterpreted and misapplied the controlling ordinance by concluding that it lacked any discretion to reject the application and by failing to adequately consider whether the rezone was consistent with the Redlands Area Plan (RAP).[3]

¶ 13    In response, the City argued that (1) the council approved the rezoning application in accordance with the Plan and controlling ordinances; (2) the neighbors' due process claim fails because they were properly provided with adequate notice and a meaningful opportunity to be heard; and (3) the council properly construed and considered the RAP as an advisory document rather than a binding standard that controlled the rezoning decision.

¶ 14    In a thorough and well-reasoned order, the district court denied the neighbors' claim. The court concluded that the neighbors had notice of the hearing and were provided ample and

---

[3] The RAP is a 2002 advisory document adopted by the Mesa County Planning Commission and the City of Grand Junction Planning Commission that addresses future development in the Redlands area.

6

meaningful opportunities to be heard and thus suffered no violation of their due process rights. The court also concluded that the council properly treated the Plan and ordinances as the controlling legal authority and the RAP as an advisory document. Thus, the district court determined that the council did not abuse its discretion by finding that the application met the Plan's rezoning requirements. The neighbors timely appealed the district court's order.

¶ 15 In August 2024, the City repealed the RAP. The repeal became effective the following month.

## II. Due Process Claim

¶ 16 The neighbors contend the district court erred by concluding that the City provided them with a meaningful opportunity to be heard. We are not persuaded.

### A. Standard of Review and Applicable Law

¶ 17 We review a district court's interpretation of the Colorado Rules of Civil Procedure de novo. *Brown v. Walker Com., Inc.*, 2022 CO 57, ¶ 14. When construing the rules, we apply "settled principles of statutory construction" and interpret the rules "according to their commonly understood and accepted meanings."

7

*Id.* (citation omitted).  Similarly, we review de novo the construction and application of municipal ordinances.  *City of Golden v. Sodexo Am., LLC*, 2019 CO 38, ¶ 22.

### 1.    Judicial Review Under C.R.C.P. 106(a)(4)

¶ 18    In a Rule 106(a)(4) action, a district court may grant relief only if the governing body has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy, and adequate remedy otherwise provided by law.  *Martin v. Arapahoe Cnty. Ct.*, 2016 COA 154, ¶ 10; C.R.C.P. 106(a)(4)(I).

¶ 19    "Review of a governmental body's decision pursuant to Rule 106(a)(4) requires an appellate court to review the decision of the governmental body itself rather than the district court's determination regarding the governmental body's decision."  *Bd. of Cnty. Comm'rs v. O'Dell*, 920 P.2d 48, 50 (Colo. 1996).  In doing so, we apply the same legal standard as the district court.  *Alpenhof, LLC v. City of Ouray*, 2013 COA 9, ¶ 9.  A governmental body abuses its discretion if it misinterprets or misapplies the law or if no competent record evidence supports its decision.  *Id.*  Rule 106(a)(4) does not permit judicial review of legislative acts such as the passage of a code or ordinance; rather the reviewing court's analysis

focuses on the application of an ordinance to a particular set of facts. *Yakutat Land Corp. v. Langer*, 2020 CO 30, ¶ 16.

¶ 20     A reviewing court "is not[,] and should not" sit as, a "zoning board of appeals." *O'Dell*, 920 P.2d at 50 (citation omitted).  Rather, the governing body's decision must be upheld unless it is contrary to law or there is no competent evidence to support it.  *See Whitelaw v. Denver City Council*, 2017 COA 47, ¶ 8 (the no competent evidence standard requires a conclusion that there is such an absence of evidentiary support that the decision can be explained only as an arbitrary exercise of authority).

## 2.     The Right to Due Process

¶ 21     The United States and Colorado Constitutions guarantee the right to due process in matters where a person may be deprived of their life, liberty, or property.  *See* U.S. Const. amend. XIV, § 1;Colo. Const. art. II, § 25.  Thus, before making a quasi-judicial decision, a governmental body must provide "notice and an opportunity to be heard as a matter of 'fundamental fairness to those persons whose protected interests are likely to be affected by the governmental decision.'" *Whitelaw*, ¶ 8 (quoting *Cherry Hills Resort Dev. Co. v. City of Cherry Hills Village*, 757 P.2d 622, 626 (Colo. 1988)).

¶ 22    "The due process requirement of neutrality in adjudicative proceedings entitles a person to an impartial decision-maker." *No Laporte Gravel Corp. v. Bd. of Cnty. Comm'rs*, 2022 COA 6M, ¶ 41. "An impartial adjudication requires 'the absence of a personal, financial, or official stake in the decision evidencing a conflict of interest on the part of a decision-maker.'" *Id.* (citation omitted). "This concept encompasses both the absence of actual bias and the risk of actual bias." *Id.* The obligations of neutrality extend to governmental actors acting in a quasi-judicial capacity. *Id.*

¶ 23    "Acting as quasi-judicial decision-makers, city council members are entitled to a 'presumption of integrity, honesty, and impartiality.'" *Whitelaw*, ¶ 11 (quoting *Soon Yee Scott v. City of Englewood*, 672 P.2d 225, 227 (Colo. App. 1983)). To overcome this presumption and invalidate the council's action, the neighbors must demonstrate that the conflict, if any, had an impact "on the outcome of the proceeding." *Id.* at ¶¶ 12-13.

B.    Application

¶ 24    The neighbors concede that they received adequate notice of the hearing, but they contend that the district court erred by finding that the City provided them a *meaningful* opportunity to be

10

heard. They also assert that the hearing was fundamentally unfair due to the City's alleged bias.[4]

¶ 25 The neighbors argued before the district court, and again on appeal, that they were denied a meaningful opportunity to be heard because, among other reasons, (1) the council failed to engage in meaningful deliberation or discussion; (2) the councilmember who voted against approval of the application provided no explanation for that vote; (3) the mayor pro tem discussed personal experiences living near multifamily housing; (4) a councilmember stated that he felt like he did not have discretion to deny the application; (5) the mayor stated that she was checking the boxes for the application and that the decision was pretty black and white; (6) she also referred to avoiding "emotional" decisions; (7) staff members were biased against the neighbors and spent too much time advocating for approval of the rezoning application; and (8) there were ex parte

---

[4] Both parties rely on California case law to bolster their due process arguments. Although we are permitted to consider authority from other jurisdictions in the absence of controlling Colorado case law, because there is Colorado law on point, we need not rely on the cited California cases. *See Wal-Mart Stores, Inc. v. United Food & Com. Workers Int'l Union,* 2016 COA 72, ¶ 17 ("[W]e, of course, are not bound by the decisions of the courts of other states.").

communications between City staff, developer representatives, and councilmembers.

¶ 26    The Defendants counter that the City afforded the neighbors meaningful opportunities to be heard both before the planning commission and council, and by written comments.  The Defendants also argue that councilmembers listened to and considered the public's comments and the evidence presented by the developers and City staff, and they properly concluded that the available information demonstrated that the requested rezoning was consistent with the Plan and applicable zoning ordinances.  Thus, the Defendants conclude, the City did not deny the neighbors a meaningful opportunity to be heard.

¶ 27    We discern no error in the district court's finding that the City provided the neighbors a meaningful opportunity to be heard.  The neighbors were permitted to provide written comments between May and August.  There were no limits on the number or length of those comments.  Furthermore, the City provided the neighbors an opportunity to speak at the planning commission and council meetings.  Indeed, numerous community members, including one of the neighbors, expressed concerns at those meetings.

¶ 28    Nor did the mayor pro tem's references to his personal experience living next to multifamily housing create error. Nothing in Rule 106 or the Federal and Colorado Due Process Clauses prohibits a fact finder from drawing on their lived experience.

¶ 29    The neighbors' arguments about "checking the boxes," "lack of discretion," and dismissing "emotional comments" are similarly unavailing. When read in context, these councilmembers simply acknowledged that they were required to evaluate whether the proposed rezoning was consistent with the Plan and met one or more of the five criteria set forth in G.J.M.C. section 21.02.140(a)(1) to (5). In doing so, a number of councilmembers expressed that they heard and empathized with the neighbors' concerns, but they were obligated to view the evidence and code dispassionately. We discern no error in these statements.

¶ 30    Nor do we find any of the other specific allegations persuasive. As to the asserted absence of factual findings to support the majority and dissenting votes, we begin by noting that "[g]enerally, express factual findings are not a prerequisite to a valid decision by an administrative board if the necessary findings may be implied from the action taken." *Canyon Area Residents for the Env't v. Bd.*

13

*of Cnty. Comm'rs*, 172 P.3d 905, 909 (Colo. App. 2006) (citing *Sundance Hills Homeowners Ass'n v. Bd. of Cnty. Comm'rs*, 534 P.2d 1212 (Colo. 1975)). Thus, the councilmembers were not required to provide specific factual findings to support their votes. But we also note that a number of those who voted in favor of the application provided both the factual and legal context for their decision.

¶ 31    Nor do we discern any error with how the council managed the evidentiary presentations. In the first instance, the structure and process for conducting a public hearing is left to the sound discretion of the presiding board. *See Carpenter v. Civ. Serv. Comm'n*, 813 P.2d 773, 776 (Colo. App. 1990) ("A hearing is nothing more than an opportunity to be heard at a meaningful time and in a meaningful manner."); *People v. Dist. Ct.*, 767 P.2d 239, 241 (Colo. 1989) (a trial court has broad discretion and is the final arbiter of that admissibility of evidence). During the hearing, a councilmember asked the developer's engineer and the city planner multiple questions and consulted with the city attorney when there was any confusion about council's quasi-judicial function. Councilmembers acknowledged and consistently referred to their

obligation to objectively apply the Plan and controlling ordinances. And though not required, multiple councilmembers articulated general facts and Plan standards that informed their decision. These actions contradict the neighbors' assertion that the council merely rubber-stamped the planning staff's recommendations.

¶ 32 The neighbors' expressions of concern regarding the time given to the participants at the hearing and the allegedly ex parte communications between staff members and the developer or among councilmembers are also unavailing.

¶ 33 As it relates to the allocation of time between the developer and the neighbors, there is no indication that any neighbors were unable to meaningfully convey their concerns at the hearing. Moreover, there is no indication that the allotted time was inadequate or that interested neighbors were deprived of their ability to be heard. And even though oral comments were limited to three minutes per person at the May and August hearings, the neighbors were also permitted to submit written comments online prior to those hearings. Viewing the record as a whole, we conclude that the district court did not err by rejecting the neighbors'

15

contention that they were denied the opportunity to be meaningfully heard during this process.

¶ 34     We also reject the neighbors' argument that the City's communications with the participants reflected a bias in favor of the developer. The application process requires communications between the planning department and the developer, and the neighbors point to nothing untoward about those communications. Similarly, we do not perceive anything improper about alleged communications between two councilmembers who apparently shared some initial perspectives concerning the Plan and applicable ordinances as they related to the application.[5]

¶ 35     Because the record indicates that the neighbors had a meaningful opportunity to be heard, we discern no error in the

---

[5] In their reply brief, the neighbors argue for the first time on appeal that the City failed to provide a full record of all communications between the staff and the developer, or among councilmembers. But we do not address issues raised for the first time on appeal. *Gebert v. Sears, Roebuck & Co.*, 2023 COA 107, ¶ 25. Nor will we speculate about the supposed content of communications that are not documented in the record. *See In re Marriage of Tessmer*, 903 P.2d 1194, 1197 (Colo. App. 1995) (The court of appeals is bound by the record presented and may not consider "arguments and assertions not supported by evidence in the record.").

district court's conclusion that the City did not violate their due process rights.

## III. Misapplication of the Law

¶ 36 The neighbors also claim that the district court erred when it found that the council properly applied the Plan and controlling ordinances. Again, we are not persuaded.

### A. Standard of Review and Applicable Law

¶ 37 A governing body abuses its discretion if it misinterprets or misapplies the law. *No Laporte Gravel*, ¶ 23. We review a district court's interpretation of statutes and municipal ordinances de novo. *Asphalt Specialties, Co. v. City of Commerce City*, 218 P.3d 741, 745 (Colo. App. 2009). Although we are not bound by a governing body's interpretation of its local ordinances, we extend deference to those interpretations. *See Roundup Found., Inc. v. Bd. of Adjustment*, 626 P.2d 1154, 1156-57 (Colo. App. 1980) (granting deference to a board of adjustment's interpretation of a municipal ordinance).

### B. Application

¶ 38 The neighbors contend that the City misapplied the law by treating the RAP as merely an advisory document. The neighbors

17

argue that the approval of the rezoning application was inconsistent with the RAP's stated objectives, including protecting the floodplain and related wetlands, protecting wildlife corridors, and maintaining the pastoral setting of neighboring properties by preserving gradual transitions to more densely populated areas. The neighbors reason that these failures contradicted the Plan's incorporation of neighborhood plans and the substantive provisions of the RAP.

¶ 39 The Defendants first contend that the issue is moot because the City repealed the RAP after this appeal was filed. In the alternative, they argue that regardless of its repeal, the RAP was merely advisory, and therefore, the council was not bound by its provisions when deciding the rezoning issue.

### 1. Mootness

¶ 40 Approximately a week after the neighbors filed their notice of appeal, the council adopted a resolution repealing the RAP (along with three other neighborhood plans). Because the RAP no longer exists, the Defendants argue that even if the rezoning failed to appropriately apply the RAP, it doesn't matter. In other words, even if we were to reverse the City's decision based on the failure to properly apply the RAP, it would not affect the outcome of the

18

dispute because on remand the City could again approve the rezoning application for the same reasons without consideration of the repealed RAP. *See Gresh v. Balink*, 148 P.3d 419, 421 (Colo. App. 2006) ("A case is moot when the relief sought, if granted, would have no practical legal effect on the controversy.").

¶ 41    Based on the mootness doctrine, a court generally will not decide an issue that will not affect the outcome of the case. *Giuliani v. Jefferson Cnty. Bd. of Cnty. Comm'rs*, 2012 COA 190, ¶ 15 ("Where a claim is moot on appeal, we decline to address its merits, and instead dismiss the claim." (citing *USAA v. Parker*, 200 P.3d 350, 356 (Colo. 2009)); *Campbell v. Meyer*, 883 P.2d 617, 618 (Colo. App. 1994). The neighbors argue that mootness principles should not be applied in this case because they were not provided notice and a meaningful opportunity to be heard prior to the repeal of the RAP. They also argue that the Plan continues to reference and incorporate the RAP even after its repeal.

¶ 42    We need not weigh in on the mootness issue because regardless of the current status of the RAP, the City did not err by not giving it controlling import.

19

## 2. The RAP's Advisory Nature

¶ 43    The RAP was originally passed in 1986. It was last updated in 2002. Its self-described purpose is "to identify and articulate detailed needs of the area as they have changed over the last several years. The [RAP] will help achieve community goals by providing specific policies and implementation strategies." It does not purport to set forth the controlling criteria for the City's decision whether to approve a rezoning request.

¶ 44    The Plan was originally adopted in 2010 and last updated in 2020. The Plan designates neighborhood plans, such as the RAP, as "guiding documents to the City." Specifically, the Plan provides:

> Previously adopted plans, studies, and reports completed by or for the City of Grand Junction are important to the current comprehensive planning process. The 2010 Comprehensive Plan is first among these as it contains many guiding principles and information that have remained relevant to the City's vision a decade later. In addition, many of the 2010 Comprehensive Plan policies and recommendations remain consistent with the . . . Plan. Where this consistency occurs, policies and recommendations from the previous plan have been incorporated into the . . . Plan. Relationship to [other plans, including the RAP] also remain important for City long-term planning and provide for a more granular assessment and recommendations for

20

> specific areas . . . or specific services. . . .
> These plans remain guiding documents to the
> City and should be reviewed for consistency
> with [the] Plan and updated periodically.

¶ 45     These provisions indicate that the RAP is an advisory document that sets forth recommendations and guidelines for the City to consider when addressing zoning and land use issues in the Redlands region.  But these policies are subservient to the Plan. And most importantly, the RAP does not change or supersede the requirements of the G.J.M.C., which controls the approval of a rezoning request.

### 3.    The Municipal Code Requirements

¶ 46     Section 21.02.140(a) articulates five criteria for the City to evaluate when determining whether an area should be rezoned:

> In order to maintain internal consistency
> between the [G.J.M.C.] and the zoning maps,
> map amendment must only occur if:
>
> (1) Subsequent events have invalidated the
> original premises findings and/or;
>
> (2) The character and/or condition of the area
> has changed such that the amendment is
> consistent with the Plan; and/or
>
> (3) Public and community facilities are
> adequate to serve the type and scope of the
> proposed land use; and/or

(4) An inadequate supply of suitably designated land is available within the community as defined by the presiding body to accommodate the proposed land use; and/or

(5) The community or area, as defined by the presiding body, will derive benefits from the proposed amendment.

¶ 47    The neighbors concede that a rezoning application need not satisfy all five of these criteria. But they contend that the councilmembers improperly concluded that they had no discretion to deny the application if any one of the five criteria was satisfied. We disagree.

¶ 48    Read in context, the councilmembers' statements that their decision was controlled primarily by whether the application met one of the criteria set forth in section 21.02.140(a)(1) to (5) and was consistent with the vision and objectives of the Plan. We acknowledge that a couple of the councilmembers expressed reluctance to reject the application if it met the approval conditions, but we do not interpret these statements as an abandonment of their discretion to deny the application.

¶ 49    For example, one councilmember said, "Our job is to apply the rules that have been adopted to the facts of the case. We don't have

a lot of discretion. And I, I have a lot of commiseration with the residents who have come and talked." The mayor stated, "We are not here to make an emotional decision. We are here to make a very objective decision, which is pretty black and white. And that's whether or not [the rezoning application] meets the criteria of the [G.J.M.C.] and whether or not this meets the [Plan]."

¶ 50 We interpret these statements as an expression of the councilmembers' recognition that they sat in a quasi-judicial capacity, and that they were obligated to apply the approval criteria objectively. We reject the notion that these statements reflect their understanding that they were compelled to accept the application simply because one or more of the criteria was established. Indeed, a councilmember listening to the same presentation and discussion exercised just such discretion by voting against the application.

¶ 51 In sum, we reject the contention that the council misinterpreted or misapplied the controlling law, including section 21.02.140(a)(1) to (5) and the Plan.

## IV. Disposition

¶ 52    Because the City did not violate the neighbors' due process rights, misapply the law, or otherwise abuse its discretion, the district court's judgment is affirmed.

JUDGE WELLING and JUDGE KUHN concur.