COLORADO MOTOR VEHICLE DEAL-ER LICENSING BOARD, An Agency of the Colorado Department of Revenue, Appellee,

v.

NORTHGLENN DODGE, INC., Respondent–Appellant.

No. 97CA0425.

Colorado Court of Appeals, Div. I.

Oct. 15, 1998.

As Modified on Denial of Rehearing Jan. 14, 1999.

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S.1997.

**710**

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Ceri C. Williams, Assistant Attorney General, Denver, for Appellee.

Sheila H. Meer, P.C., Sheila H. Meer, Kimberly A. Porter, Denver, for Respondent–Appellant.

Opinion by Judge JONES.

In this administrative appeal, respondent, Northglenn Dodge, Inc. (Northglenn), seeks review of a final order of the Colorado Motor Vehicle Dealer Licensing Board (Board) which determined that Northglenn had violated §12–6–118, C.R.S.1998, and imposed a penalty. Additionally, counsel for Northglenn appeals the award of attorney fees assessed against her personally. We affirm the order in part, vacate the penalty, dismiss counsel's appeal, and remand the cause with directions.

Northglenn is a new car dealership licensed to do business by the Board.

In December 1995, the Board served Northglenn with a notice of charges. These charges were subsequently dismissed, and new charges were reissued in May 1996 and amended in August 1996. In May 1996, finding certain motions filed by Northglenn's attorney to be groundless and frivolous, the Board granted the Attorney General's motion for attorney fees and, after a hearing, assessed fees in the amount of $368 against counsel personally.

Northglenn was charged with violating six provisions under §12–6–118, C.R.S.1998. The six charges were comprised of several individual counts, including two counts of making a fraudulent or illegal sale, five counts of willfully misrepresenting or failing to disclose material facts to customers, two counts of failing to comply with notice requirements, two counts of failing to disclose the capital cost reduction in lease agreements or disclosures, two counts of tax evasion, and one count of selling a vehicle which it had accepted for trade-in before the former owner of the vehicle had been approved for financing on his new vehicle.

After a six-day hearing, the Board found that sufficient evidence had been presented to sustain four of the charges, and dismissed the two remaining charges concerning notice and tax evasion. As a penalty, the Board ordered that Northglenn's motor vehicle dealer license be suspended for two days, with one day of the suspension to be held in abeyance, upon the condition that Northglenn pay a fine of $35,000 and successfully complete the terms and conditions of a two-year probation.

This appeal followed.

### I. *Recusal*

Northglenn first contends that it was error for the Board to decline to recuse itself. We disagree.

There is a presumption of integrity, honesty, and impartiality in favor of those serving in quasi-judicial capacities. Thus, it is presumed that administrative agency deci-

sionmakers will conduct the affairs of their agencies impartially, in the absence of a personal, financial, or other official stake in the decision. *Mountain States Telephone & Telegraph Co. v. Public Utilities Commission*, 763 P.2d 1020 (Colo.1988); *First Bank v. State*, 852 P.2d 1345 (Colo.App.1993).

Here, no claim has been made as to any conflict of interest on the part of a decisionmaker. Rather, Northglenn contends that improper conduct by the Board's staff, specifically an investigator and an unknown agent, created the appearance of impropriety, thereby requiring recusal.

■ Contrary to Northglenn's argument, we do not agree that evidence of a potential bias on behalf of an agency's staff member alone is sufficient to rebut the presumption of a board's impartiality. Rather, because it is those serving in a quasi-judicial capacity whose impartiality is at issue, one challenging a board's decision must establish that the staff member's bias had an actual impact on the board's decision. *See Do-Right Auto Sales v. Howlett*, 401 F.Supp. 1035 (D.C.Ill.1975).

Thus, in the absence of any evidence indicating that a Board member acting in a quasi-judicial capacity directed, condoned, or had knowledge of, improper conduct by staff members, the hearing must be held to have been conducted impartially.

Here, the record indicates that Northglenn failed to present any evidence indicating that the Board's decision was affected by the alleged improper conduct of its staff members. Furthermore, at a hearing on the matter, each board member testified as to his or her impartiality. Accordingly, we find no error in the Board's denial of Northglenn's request for recusal.

## II. *Expert Witness Contact*

Northglenn further contends that the Board erred in subjecting the dealership to one of the forgery charges because the Board's expert witness, without authorization from the Board or from Northglenn's counsel, contacted Northglenn's expert witness. We perceive no error.

■ While we agree that the contact by the Board's expert witness was improper, we conclude, based on the record, that no bias or prejudice resulted from the contact. Accordingly, dismissal of the charge was not warranted.

## III. *Interpretive Rule B*

Northglenn next contends that it was denied due process by the Board's order denying its discovery requests because the Board's interpretive rule relied on is *ultra vires* or, alternatively, because the denial was fundamentally unfair. We disagree.

### A.

■ First, Northglenn asserts that Colorado Motor Vehicle Dealer Licensing Board Interpretive Rule B is void *ab initio* because it was not adopted in compliance with the procedural requirements of the Administrative Procedure Act, §24–4–101, et seq., C.R.S. 1998 (APA).

The APA establishes the procedures that must be followed by a state agency when adopting rules. It generally requires notice and hearing procedures to be followed when the agency promulgates new rules. Section 24–4–103, C.R.S.1998. Specifically exempted from this requirement, however, are "interpretive rules or general statements of policy, which are not meant to be binding as rules, or rules of agency organization." Section 24–4–103(1), C.R.S.1998. Furthermore, the APA provides that no rule "shall be relied upon or cited against any person" unless it was available to the public in accordance with the required procedures under the Act. Section 24–4–103(10), C.R.S.1998.

Northglenn bases its argument of *ultra vires* on its characterization of Interpretive Rule B as a "legislative" rather than an "interpretive" rule. If it is a legislative rule, Interpretive Rule B would have to have been promulgated in accordance with the notice and hearing requirements under the Act. The agency is exempted from those requirements if the rule is deemed to be "interpretive."

Northglenn argues that the rule is legislative and that, therefore, because the agency did not comply with the notice and hearing

requirements in promulgating Interpretive Rule B, the rule, and any decisions rendered pursuant to it, are void. We disagree with Northglenn's characterization of Interpretative Rule B as other than an interpretive rule.

■ An administrative rule adopted pursuant to an agency's statutory authority to promulgate a substantive standard that carries the force of law is a "legislative" rule. An "interpretive" rule, in contrast, serves the advisory function of explaining the meaning of a word or phrase in a statute or other rule, and describes the types of factors that an agency will consider in future administrative proceedings without binding the agency to a particular result. *Regular Route Common Carrier Conference v. Public Utilities Commission,* 761 P.2d 737 (Colo.1988). *See generally* 1 K. Davis, Administrative Law Treatise §6.3 (3d ed.1992).

■ An agency's own characterization of a rule is entitled to deference but is not determinative of its nature. *Regular Route Common Carrier Conference v. Public Utilities Commission, supra.*

Here, the rule at issue provides in relevant part:

> Discovery will normally be limited to the exchange of the name, address and telephone number of witnesses expected to testify and documents intended to be introduced into evidence at hearing [sic]. The identity of witnesses and documents shall be provided by each party, and received by the other, not later than 9 days prior to the hearing. Failure to comply may result, at the sole discretion of the Board, in the exclusion of the witnesses and/or documents not disclosed. The parties may, of [sic] their own expense, interview witnesses prior to the hearing.
>
> Additional discovery and prehearing disclosures may be ordered upon a showing of good cause as defined by C.R.C.P. Rule [sic] 26.

The underlying statute, upon the interpretation of which the agency adopted Interpretive Rule B, is §24–4–105(4), C.R.S.1998. The statute provides, in relevant part, as follows:

> Any agency conducting a hearing ... shall have the authority to: ... dispose of motions relating to the discovery and production of relevant documents and things for inspection....

Our review of the agency's rule in conjunction with the underlying statute persuades us that the nature of this rule is interpretive rather than legislative.

First, we note that the agency itself characterizes the rule as interpretive. Because the agency's characterization reflects its intent in adopting the rule, we give it considerable deference. *See Regular Route Common Carrier Conference v. Public Utilities Commission, supra.*

Secondly, in light of the authorization given to the Board by the statute to dispose of discovery motions, it is reasonable to view Interpretive Rule B as serving the advisory function of explaining how the Board interprets the authority granted to it by the statute. Thus, the purpose of the rule is to provide those who choose to engage in discovery with minimum guidelines as to how the discovery process will be conducted with respect to this agency. In addition, the language of the rule does not bind the agency to a particular result, but rather, provides for flexibility within the guidelines and grants discretion to the Board to sanction or not sanction those who choose not to operate within the guidelines.

Interpretive Rule B then, as an interpretive rule, falls within the express exception to the notice and hearing requirements of §24–4–103. *See* §24–4–103(1), C.R.S.1998; *Regular Route Common Carrier Conference v. Public Utilities Commission, supra.* Accordingly, we reject Northglenn's assertion that this rule and any rulings by the Board based upon it are void.

### B.

We also reject Northglenn's contention that the Board's discovery limitations were fundamentally unfair, requiring reversal.

■ Northglenn specifically assigns as error two of the limitations imposed by the Board. First, Northglenn contends that it

was error for the Board to deny Northglenn's request to depose two of the Board's investigators. After noting that Northglenn had already deposed one of the investigators, that the investigative reports had already been produced, and that both investigators were available for interviews, the Board denied this request on the basis that it was duplicative and that the information could be obtained in a less expensive manner.

Secondly, Northglenn contends that it was prejudiced by the Board's denial of its request for a copy of all the exhibits the attorney general intended to rely on at trial, and that such prejudice constitutes reversible error. The Board denied this request because, under the discovery schedule in Interpretive Rule B, Northglenn would be provided with this information no later than nine days before the hearing, and therefore, it would be unfair to subject the Attorney General to an earlier timetable. The Board also noted that Northglenn had already been provided with files containing all consumer complaints, investigative reports, and other documents relating to all the charges against Northglenn.

Our review of the record leads us to conclude that the Board did not err because it did not act unreasonably or arbitrarily in imposing these discovery limitations.

With respect to Northglenn's request to depose the investigators, we conclude that Northglenn suffered no prejudice from the denial of this request since the conduct of the investigators had no impact on the outcome of the hearing.

Additionally, with respect to Northglenn's request for early production of exhibits, Northglenn's complaint is that its hearing preparations were unfairly impeded because the Attorney General delivered the exhibits without including an index. However, the record indicates that Northglenn had been provided with these same documents almost nine months prior to the hearing and, therefore, had had several months to review them in preparation for the hearing. Accordingly, we find that Northglenn suffered no prejudice.

### IV. *Delegation to Executive Secretary*

██ Northglenn next contends that the Board unlawfully delegated authority to its Executive Secretary to rule on four procedural orders and that the orders are, therefore, void. We disagree.

The record is devoid of any evidence that the Executive Secretary exercised any inappropriate judgment or discretion, or otherwise acted in a quasi-judicial capacity with respect to these orders. Indeed, contrary to Northglenn's contention, the record reveals that each Board member actively participated in the decision-making process with respect to the merits of several of Northglenn's motions.

In the absence of evidence that suggests otherwise, the mere fact that the Executive Secretary signed these orders does not mean that the Executive Secretary was improperly making decisions. It simply indicates that the Board delegated authority to the Executive Secretary to sign orders on behalf of the Board. Because this function is entirely ministerial or administrative in nature, such a delegation was within the purview of the Board. *See Fremont RE–1 School District v. Jacobs*, 737 P.2d 816 (Colo.1987) (general rule is that a quasi-municipal body delegates to subordinate officers functions which are ministerial or administrative in nature, and which leave little or nothing to the judgment or discretion of the subordinate).

### V. *Admission of Evidence*

Northglenn also contends that several items of evidence were improperly admitted and that the Board's consideration of this evidence requires reversal.

██ Generally, those conducting administrative hearings need not comply strictly with the rules of evidence. The standard to be applied is whether the evidence possesses probative value commonly accepted by reasonable and prudent persons in the conduct of their affairs. Section 24–4–105(7), C.R.S. 1998; *McPeck v. Colorado Department of Social Services*, 919 P.2d 942 (Colo.App. 1996).

██ Furthermore, error predicated on the admission of evidence is harmless unless

it affects the substantial rights of a party. *Hancock v. State*, 758 P.2d 1372 (Colo.1988); *Tran v. Hilburn*, 948 P.2d 52 (Colo.App. 1997).

### A.

Northglenn complains that evidence of customer "injuries" not raised in the notice of charges was improperly considered by the Board. We perceive no error.

The "injuries" at issue consist of statements of alleged wrongdoing found in two customer complaints, testimony of a customer concerning her doubts as to the length of her lease with Northglenn, and testimony of another customer concerning his difficulty in reselling the vehicle he purchased from Northglenn. None of this evidence directly supported the charges against Northglenn.

■ However, a review of this evidence in context reveals that the customer complaint exhibits and the customer statement regarding the lease constitute circumstantial evidence that had a tendency to make the existence of facts of consequence, that Northglenn forged the signatures of two of its customers and that it made material misrepresentations to two additional customers, more probable than it would be without the evidence. *See* CRE 401. Therefore, the Board properly admitted this evidence. *See* CRE 402.

■ Furthermore, as to the specific evidence concerning the customer's difficulty in selling his vehicle, while we agree that the evidence was irrelevant, in light of the substantial nature of the other evidence supporting the charges of wrongdoing, the admission of this evidence did not affect Northglenn's substantial rights. Therefore, the error in admitting this last piece of evidence was harmless. *See Tran v. Hilburn, supra.*

### B.

■ Northglenn further argues that the Board erred in admitting hearsay testimony regarding the contents of documents not previously admitted into evidence. Northglenn also contends that the Board erred in later admitting the documents because the deadline for exhibit exchange had expired. We disagree with both contentions.

During an initial hearing, by testifying concerning the contents of a customer's title documents that had not yet been admitted into evidence, an investigator for the Board provided hearsay testimony concerning the title history of a vehicle of that customer. Northglenn objected, arguing that it was unable to cross-examine the witness as to what the documents revealed without the benefit of having the documents admitted. At a subsequent hearing, when the same witness was on the stand, the Board permitted the documents to be admitted in an attempt to cure the problems raised by Northglenn's earlier objection.

In addition to the fact that hearsay evidence is generally admissible in administrative hearings, *see Partridge v. State*, 895 P.2d 1183 (Colo.App.1995), the Board's subsequent admission of the documents at issue obviated any prejudice that Northglenn may have suffered. The record indicates that Northglenn was served with these exhibits in advance of the hearing in which they were admitted and that, at the hearing, Northglenn was provided with the full opportunity to cross-examine the witness as to the contents of the documents. Thus, we conclude that Northglenn suffered no prejudice from either the admission of the hearsay testimony or the admission of the documents. *See Tran v. Hilburn, supra.*

### VI. *Sufficiency of Evidence*

Northglenn next contends that there was insufficient evidence presented to support the charges relating to fraudulent or illegal transactions and the charges relating to willful misrepresentation. We agree in part.

■ Whether there is substantial evidence to support an agency's decision is a question of law. In resolving the question of law, a reviewing court must view the record in a light most favorable to the agency decision. *Ace West Trucking, Inc. v. Public Utilities Commission*, 788 P.2d 755 (Colo. 1990); *Halverstadt v. Department of Corrections*, 911 P.2d 654 (Colo.App.1995).

The evaluation of the credibility of the witnesses and of the weight, probative value, and sufficiency of the evidence is solely within the fact-finding province of the agency. *Board of Assessment Appeals v. Colorado Arlberg Club,* 762 P.2d 146 (Colo.1988); *Yale Investments, Inc. v. Property Tax Administrator,* 897 P.2d 890 (Colo.App.1995). Moreover, if inferences to be drawn from the evidence are conflicting, the reviewing court may not second guess the agency's choice between two fairly opposing views. *Colorado State Board of Nursing v. Lang,* 842 P.2d 1383 (Colo.App.1992).

Thus, an agency's decision will not be disturbed if it is supported by substantial evidence and reasonable· inferences which may be drawn therefrom. *Goodwill Industries v. Industrial Claim Appeals Office,* 862 P.2d 1042 (Colo.App.1993).

### A.

Northglenn asserts that there was insufficient evidence to support the two counts under Charge I, in which it was alleged that Northglenn had forged two customers' signatures on an automobile lease and had forged one customer's signature on an odometer statement. Specifically, Northglenn contends that there was no evidence presented to show that Northglenn acted with the intent to defraud, an essential element of forgery, because there was no evidence indicating that an agent of Northglenn had committed the forgeries. We disagree.

A presumption of intent to defraud is created when the evidence shows that the person charged had knowledge that the instrument was false. *Cameron v. People,* 170 Colo. 504, 462 P.2d 606 (1969).

With respect to the forgery charges, the record indicates that the Board was persuaded by the agency's expert and found that the signatures on the documents in question had been forged. This conclusion permitted the Board to infer from the evidence of forgery, along with the circumstantial evidence presented as to motive and opportunity, that someone acting on behalf of Northglenn had committed that act knowing that the signatures were false. The circumstantial evidence included testimony from Northglenn's business manager indicating that one of Northglenn's former employees had signed and submitted for a title application the odometer disclosure statement containing one of the forged signatures.

Therefore, because such inference is reasonably drawn and is supported by the evidence, we must accept it on review. *See Colorado State Board of Nursing v. Lang, supra.* Accordingly, we find that there is sufficient evidence to support the Board's conclusion that Northglenn had made fraudulent or illegal sales or transactions as alleged in Charge I, counts 1 and 2.

### B.

Northglenn also asserts that there was insufficient evidence to find that it had acted "willfully" with respect to the four counts under Charge II, in which it was alleged that Northglenn had willfully misrepresented used vehicles as new, as well as the count under Charge II, in which it was alleged that it had willfully failed to disclose the capital cost reduction on a lease transaction, and, finally, as·to the one count under Charge VI, alleging that Northglenn had willfully sold a trade-in vehicle prior to approval of the vehicle owner's financing on another purchase. Additionally, relying on *Spedding v. Motor Vehicle Dealer Board,* 931 P.2d 480 (Colo. App.1996), Northglenn urges that, as to Charge II, count 4, relating to Northglenn's failure to disclose, because the Board did not enter a specific finding mentioning "willful" conduct, the findings of fact are insufficient. As to Charge II, count 4, we conclude that remand for additional findings is necessary.

Conduct is "willful" when the actor is aware of what he or she is doing, *i.e.,* that his or her actions are deliberate and not inadvertent or accidental. *People v. Fullop,* 837 P.2d 215 (Colo.App.1992).

In the *Spedding* case, the Board did not enter findings as to willful conduct because it mistakenly believed that the "willful" element of §12–6–118(3)(I), there at issue, did not apply to the element of "failure to disclose." The *Spedding* court explained why the willful element does, in fact, apply to the

element of failure to disclose, and then noted that the Board erred in not so finding.

Generally, "[t]he absence of [specific] findings by an administrative board is not fatal to a decision if there is evidence in the record which supports its decision.... [Thus, the agency's] express findings, taken together with reasonable implications based upon its assessment of the totality of the evidence presented ... [may be] adequate to apprise ... [as to] the basis of the decision." *Burns v. Board of Assessment Appeals,* 820 P.2d 1175, 1177 (Colo.App.1991). *See Sundance Hills Homeowners Ass'n v. Board of County Commissioners,* 188 Colo. 321, 534 P.2d 1212 (1975); *Hudspeth v. Board of County Commissioners,* 667 P.2d 775, 778 (Colo.App. 1983)("The absence of express findings by [an administrative board] does not affect the validity of the decision where the necessary findings are implicit in the action taken."). *Cf. Sanchez v. State,* 730 P.2d 328, 332 (Colo. 1986)(court required express findings of willful conduct because predecessor statutes to §12–28–101, et seq., C.R.S.1998, regulating fireworks, allowed Secretary of State summarily to revoke license of one found to have violated certain portions of statute, holding such express findings are "necessary because the licensee suffers the immediate loss of livelihood" without customary due process protections).

 Nevertheless, we conclude that, as to Charge II, count 4, the findings are so sparse that they do not enable us to review whether Northglenn's conduct was willful. As to this count, the cause must be remanded to the Board for entry of further findings, and a concomitant reflection on the penalty, if necessary.

However, concerning the remaining counts of Charge II and Charge VI, count 1, when the totality of the circumstances is considered, the Board's express findings, and reasonable inferences from those findings, are supported by the evidence. With respect to four counts of selling used vehicles as new, the Board based its conclusion of Northglenn's willful conduct on its finding that Northglenn "had experienced computer entries causing errors in their [sic] title documents which were known to [Northglenn] and not timely corrected."

 The Board's conclusion is supported by evidence of several transactions showing that Northglenn represented vehicles with over 200 miles as "new" vehicles on the bill of sale or similar-type documents. Northglenn's defense to these charges was that the error on the documents was caused by a malfunction in its computer program. However, Northglenn's business manager, who was in charge of its computer system, testified that the dealership was aware of the malfunction for a full year before any corrective action was taken.

Thus, the Board reasonably concluded that, despite its awareness that its computer program misrepresented the status of the cars, Northglenn continued to rely on this system in selling cars to customers. The record reveals that the Board's conclusion, that Northglenn acted willfully, is supported by the evidence.

 Finally, the Board found that Northglenn had sold a trade-in vehicle before its owner's financing was approved for the purchase of another vehicle. The agency presented evidence that the customer did not enter into a contract that received financial approval with Northglenn until either March 9, or March 11, 1996, while the customer's trade-in vehicle was sold on March 7, 1996. In contrast, Northglenn presented evidence that showed that the final contract that eventually received financial approval was entered into on March 7, 1996, the same day the dealership sold the customer's trade-in.

It was within the Board's sole province to weigh all of the evidence and determine its probative value. *See Board of Assessment Appeals v. Colorado Arlberg Club, supra.* The Board's findings and conclusions indicate that it accepted the agency's version of the facts. Because this finding is supported by the evidence, we may not disturb it on review.

## VII. *Attorney Fees*

Northglenn's counsel contends that the Board erred in imposing attorney fees

against her. We dismiss that portion of the appeal.

■ When sanctions have been imposed against a litigant's attorney, the attorney is a real party in interest. *Maul v. Shaw,* 843 P.2d 139 (Colo.App.1992). Thus, in order to appeal the issue of attorney fees, the attorney must either file a separate notice of appeal or be added as an appellant to the client's notice of appeal. *Adams v. Neoplan U.S.A. Corp.,* 881 P.2d 373 (Colo.App.1993).

Because Northglenn's attorney failed to follow either of the procedures set forth in the *Adams* case, we are jurisdictionally barred from considering this issue. *See* C.A.R. 3(a) and (c); *Maul v. Shaw, supra.*

### VIII. *Penalty*

■ Finally, we agree with Northglenn's contention that the Board failed to follow the requirements of §12–6–104(3)(m), C.R.S.1998, in imposing a penalty against the dealership.

Section 12–6–104(3)(m) establishes a statutory maximum of "$10,000 for each separate offense." Here, rather than imposing a fine for each separate offense, the Board imposed a gross fine of $35,000. Because the Board failed to indicate the apportionment of the fine to each offense, we are unable to determine whether the fine imposed comports with the requirements of §12–6–104(3)(m).

Because of our resolution of this matter we need not consider Northglenn's remaining contentions.

Those portions of the order respecting the penalty assessed and Charge II, count 4 are vacated, and the cause is remanded for entry of findings concerning the element of willfulness in Charge II, count 4, and for allocation of the penalty by separate offense in accordance with §12–6–104(3)(m), C.R.S.1998. In all other aspects, the order is affirmed. The appeal by Northglenn's counsel is dismissed.

Judge METZGER and Judge KAPELKE, concur.