COLORADO MOTOR VEHICLE DEALER BOARD, Appellee,

v.

Michael A. BUTTERFIELD, License No. 241–82–7704, Respondent–Appellant.

No. 98CA2276.

Colorado Court of Appeals, Div. II.

Jan. 20, 2000.

Rehearing Denied March 20, 2000.

Certiorari Denied Oct. 10, 2000.

Ken Salazar, Attorney General, Ceri C. Williams, Assistant Attorney General, Denver, Colorado, for Appellee.

Michael G. McKinnon, Littleton, Colorado, for Respondent–Appellant.

Opinion by Judge RULAND.

Respondent, Michael A. Butterfield, appeals from an order of the Colorado Motor Vehicle Dealer Board (Board) suspending his salesperson license for a specified period and fining him $15,000. We affirm in part, reverse in part, and remand the case for further proceedings.

Respondent was employed as the Finance Manager at an automobile dealership. He was also licensed as a motor vehicle salesperson pursuant to § 12–6–108(c), C.R.S.1999.

Evidence offered to establish the charges reflects that a married couple leased and took possession of a truck from the dealership. Four days later, respondent telephoned the wife to inform the couple that financing for the transaction had not been approved because the couple's debt-to-income ratio was too high.

During this conversation, respondent inquired whether the couple had any additional income not included on the original credit application, and the wife indicated that there was no such income. Respondent then asked the wife if her husband, as an employee of United Airlines, could secure four "buddy passes" for him so that respondent could fly to Europe.

Respondent solicited the passes in exchange for insuring that financing was secured for the truck transaction. Buddy passes are provided to certain United employees and provide free air travel for their friends and relatives. A deduction of $.05 per mile traveled is then taken from the employee's paycheck.

The record indicates that $1,000 was the amount needed to place the couple's debt-to-income ratio within a permissible range and that respondent did in fact inform the bank that the couple had this amount of additional income. However, respondent did not advise the wife of his misrepresentation to the bank until later.

The bank ultimately approved financing for the couple. However, the couple returned the truck to the dealership later, and respondent was not furnished with any buddy passes.

Based upon this evidence, the Board determined that respondent engaged in a fraudulent business practice in violation of § 12–6–118(5)(f), C.R.S.1999, and that he defrauded retail buyers to their damage in violation of § 12–6–118(5)(n), C.R.S.1999. The Board also found that respondent's conduct reflected a general unfitness of character as a licensee under § 12–6–118(6)(a), C.R.S.1999. The Board therefore imposed the referenced sanctions. This appeal followed.

## I.

Initially, we address respondent's contentions that the Board failed to comply with the requirements of § 24–4–104(3), C.R.S.1999, and thus lacked jurisdiction to suspend his license.

Section 24–4–104(3) provides that:

No ... suspension ... of a license by any agency shall be lawful unless, before institution of agency proceedings therefor, the agency has given the licensee notice in writing of facts or conduct that may warrant such action and afforded the licensee opportunity to submit written data, views, and arguments with respect to such facts and conduct and, except in cases of deliberate and willful violation or of substantial danger to public health and safety, given the licensee a reasonable opportunity to comply with all lawful requirements.

## A.

Respondent first contends that the Board violated the statute by failing to provide him with written notice of the allegations related to the charges and an opportunity to respond in writing prior to initiating these proceedings. We find no reversible error.

■ For purposes of § 24–4–104(3), if a notice of hearing explicitly details the charges made against the licensee and apprises him or her of the right to present evidence in answer to the charges, there is no requirement that the licensee receive yet another notice of the agency proceeding. *See Dixon v. State Board of Optometric Examiners,* 39 Colo.App. 200, 565 P.2d 960 (1977). Further, § 24–4–104(3) does not require an agency to provide written notice of the licensee's right to submit data and argument in advance of the agency proceeding. *Speer v. Kourlis,* 935 P.2d 43 (Colo.App. 1996).

Here, the record reflects that five months prior to the filing of formal charges, respondent discussed the incident with investigators. At that time, respondent was asked if he wished to make a written statement, and he declined. There is no claim that he was unaware at that time of any of the allegations which formed the basis for the subsequent formal charges.

Next, it is undisputed that ultimately a notice of hearing and charges was served on respondent. This notice contained a detailed statement of the facts and conduct related to the violations. The notice included the specific charges asserted and advised respondent of his right to counsel and his right to present the testimony of witnesses at the hearing.

Respondent filed a written answer to the complaint. However, he failed to include any defense based upon his present claim that the Board failed to comply with the notice requirements of § 24–4–104(3). Indeed, this assertion was not presented until the hearing and then in the form of a motion to dismiss.

Under these circumstances, we conclude that no violation of the statute has been established so as to preclude the Board from exercising its jurisdiction to consider the charges.

### B.

■ We also reject respondent's contention that the Board violated § 24–4–104(3) by failing to provide him with a reasonable opportunity to comply with any applicable legal requirements in his conduct as a licensee.

■ While § 24–4–104(3) provides that revocation of a license is improper unless the licensee is first given a reasonable opportunity to comply with all lawful requirements, there is an exception if the violation is willful and deliberate. Further, the statute does not require an express finding that the licensee's conduct was willful and deliberate. *See Sanchez v. State,* 730 P.2d 328 (Colo.1986).

Here, although the Board did not expressly find in its order that respondent's conduct was willful or deliberate, it did conclude that the charges alleged in the notice had been proven. The charging document included allegations of fraudulent conduct and thus willful and deliberate conduct was necessarily at issue. Therefore, the Board implicitly found that respondent acted willfully and deliberately, and thus there was no requirement for a pre-hearing opportunity for compliance. *See Colorado Motor Vehicle Dealer Licensing Board v. Northglenn Dodge, Inc.,* 972 P.2d 707 (Colo.App.1998).

### II.

Respondent next contends that the Board's determination that he committed the alleged violations is unsupported by the evidence necessary to establish fraud. We agree as to one charge only.

■ The standard of review pertinent to the Board's decision is whether substantial evidence exists on the record to support its findings and conclusions. *See Zamarripa v. Q & T Food Stores, Inc.,* 929 P.2d 1332 (Colo.1997); *United Financial Credit v. Colorado Collection Agency Board,* 892 P.2d 446 (Colo.App.1995).

In this case, the relevant statutes provide no specific definitions of what constitutes either a "fraudulent business practice" for purposes of § 12–6–118(5)(f) or "defrauding" for purposes of § 12–6–118(5)(n). Therefore, we must interpret these provisions according to established principles of statutory construction.

■ Our primary task in construing a statute is to ascertain and give effect to

legislative intent. To determine that intent, we first look to the plain language of the statute and construe the words according to their plain and ordinary meaning. *See Golden Animal Hospital v. Horton*, 897 P.2d 833 (Colo.1995). And, when the statutory language is clear and unambiguous, there is no need to resort to interpretive rules and statutory construction. *See Jones v. Cox*, 828 P.2d 218 (Colo.1992).

■ Based upon application of this analysis, we agree with respondent that the General Assembly's use of the terms "fraudulent" and "defrauding," without more, demonstrates an intent to require proof of common law fraud under the plain meaning rule.

■ Therefore, to establish the violations here, the following elements had to be proven: (1) respondent made a false representation or failed to disclose a material fact; (2) respondent knew the representation was false or that a disclosure should be made; (3) the party to whom the representation was made did not know of its falsity or was unaware of the undisclosed fact; and (4) respondent's conduct was undertaken with intent that it be acted upon. *See Brody v. Bock*, 897 P.2d 769 (Colo.1995). As discussed below, proof of damage pertains to only one of the charges.

### A.

■ Respondent contends that the evidence does not support the Board's conclusion that he committed a fraudulent business practice in violation of § 12–6–118(5)(f). According to respondent, the bank suffered no damage because it was not ultimately required to provide financing to the couple. We conclude that proof of damages is not required under this provision of the statute.

As noted, a violation of § 12–6–118(5)(f) requires only a finding that the licensee indulged in a fraudulent business practice. In contrast, a violation of § 12–6–118(5)(n) requires the "[d]efrauding of any retail buyer *to such person's damage*" (emphasis supplied). We find it significant that although both provisions address fraudulent conduct, only § 12–6–118(5)(n) expressly includes

damage as an element of the offense. Hence, we conclude that the General Assembly imposed a damage requirement only in the case of retail buyers.

As to the remaining elements of fraud, the Board found in effect that respondent knowingly misrepresented the couple's additional income to obtain financing from the bank, and that he solicited four buddy passes from the couple as consideration for his efforts. In this regard, the wife testified that she specifically told respondent that the couple had no additional income. Moreover, a bank officer testified that the additional $1,000 was the reason financing was approved. Finally, respondent also admitted that he asked the wife for buddy passes.

To the extent that the wife and respondent presented conflicting accounts of their conversations, the Board had the task of weighing the evidence, judging the credibility of the witnesses, and resolving any conflicts. *See Board of Assessment Appeals v. Colorado Arlberg Club*, 762 P.2d 146 (Colo.1988). Because there is substantial evidence and inferences from that evidence to support the Board's ruling, it may not be disturbed on appeal.

### B.

■ Respondent contends that no substantial evidence supports the Board's conclusion that he "defraud[ed] ... any retail buyer to such person's damage" in violation of § 12–6–118(5)(n). We agree.

The Board's ruling appears to be based upon the finding that respondent solicited buddy passes from the couple in exchange for securing financing. However, there is no evidence and no finding that respondent either misrepresented or failed to disclose any material facts to the couple regarding that financing. And, the fraud practiced upon the bank cannot be said to extend to the couple. Hence, the Board erred in ruling that the charge of "defrauding of any retail buyer" had been proven.

Because we conclude that respondent did not defraud the couple, it is unnecessary to address respondent's contention relative to

whether the couple was damaged for purposes of the statute.

### C.

Finally, the Board concluded that respondent's violation of §§ 12–6–118(5)(f) and 12–6–118(5)(n) demonstrated an unfitness for licensing pursuant to § 12–6–118(6)(a). In light of our affirmance of only part of the Board's ruling on the fraud charges, the case must be remanded to it for reconsideration of this issue.

We have considered and are unpersuaded by respondent's other contentions for reversal of the judgment.

That part of the order finding respondent guilty of a fraudulent business practice is affirmed. That part of the order finding him guilty of fraud upon a buyer is reversed. The cause is remanded for reconsideration of the Board's finding that respondent violated § 12–6–118(6)(a) and for reconsideration of the sanctions imposed.

Judge MARQUEZ and Judge CRISWELL* concur.