**COLORADO MOTOR VEHICLE DEALER BOARD, Petitioner–Appellee,**

v.

**Steven Anthony BRINKER, Respondent–Appellant.**

No. 00CA1936.

Colorado Court of Appeals, Div. V.

Dec. 20, 2001.

Ken Salazar, Attorney General, Robert L. Pastore, Assistant Attorney General, Denver, CO, for Petitioner–Appellee.

Messner & Reeves, LLC, Russell E. Carparelli, Denver, CO, for Respondent–Appellant.

Opinion by Judge VOGT.

Respondent, Steven Anthony Brinker, appeals from an order of the Colorado Motor Vehicle Dealer Board (Board) suspending his motor vehicle salesperson license for one year and fining him $30,000. We affirm in part and reverse in part.

In June 1999, the Auto Industry Division of the Colorado Department of Revenue (Division) began investigating complaints that respondent had defrauded the recreational vehicle dealership where he worked by, among other things, pocketing extra sums collected on sales of vehicles and warranties. As a result of the investigation, respondent was charged with one count of violating § 12–6–118(5)(f), C.R.S.2001 (engaging in fraudulent business practice), and two counts of violating § 12–6–118(5)(q), C.R.S.2001 (willfully violating a law respecting commerce or motor vehicles).

After a hearing, the Board found that the violations had been established, fined respondent $10,000 for each of the three violations, and ordered his motor vehicle salesperson license suspended for one year for each violation, the terms of suspension to run concurrently.

## I.

Respondent contends that the suspension of his license was unlawful because the Board failed to give him notice of the facts or conduct underlying the charges, as required by § 24–4–104(3), C.R.S.2001. We disagree.

Section 24–4–104(3) states in relevant part: No revocation, suspension, annulment, limitation, or modification of a license by any agency shall be lawful unless, before institution of agency proceedings therefor, the agency has given the licensee notice in writing of facts or conduct that may warrant such action and afforded the licensee opportunity to submit written data, views, and arguments with respect to such facts or conduct . . . .

Respondent does not dispute that the "Notice of Hearing, Notice of Charges" sent to him in April 2000 adequately notified him of the facts or conduct that might warrant suspension. Nor does he argue that he was not given the opportunity to submit written data and arguments with respect to such facts. However, he contends that § 24–4–104(3) requires written notice *before* institution of agency proceedings and that, because the notice of hearing itself instituted the agency proceedings, giving notice for the first time in that document does not comply with the statute.

■ Rejecting a similar argument, a division of this court held in *Dixon v. State Board of Optometric Examiners,* 39 Colo. App. 200, 565 P.2d 960 (1977), that neither § 24–4–104(3) nor due process considerations require that the licensee receive two notices; rather, the notice of hearing serves the dual purpose of informing the licensee of the hearing date and giving him or her written notice of the facts or conduct warranting the agency's actions. *See also Colorado Motor Vehicle Dealer Board v. Butterfield,* 9 P.3d 1148 (Colo.App.2000) (citing *Dixon* for proposition that § 24–4–104(3) does not require written notice prior to the notice of hearing).

■ Under *Dixon,* respondent's contention fails. Further, even if we were to agree with respondent that, contrary to *Dixon,* the plain language of the statute requires written notice before the notice of hearing is sent, respondent would not be entitled to relief.

The June 1999 complaint, made to the Division orally and then in writing, detailed the transactions alleged by the complainants to constitute improper conduct. Respondent met with a Division investigator and a detective on two occasions in September 1999, was advised of the accusations, and gave his explanation in response to those accusations.

In January 2000, respondent received a letter from the Division that referenced the complaint, stated that the Division's investigation into "this complaint" indicated that

respondent might have violated two specified statutes, and gave respondent the opportunity to submit written data, views, and arguments within ten days.

Although the January 2000 letter did not itself describe the facts or conduct that might warrant suspension, it referred to the complaint, of which respondent had already been made aware, which did detail such facts. Further, respondent has not claimed, before the Board or on appeal, that he was unaware before the hearing of the facts or conduct on which the charges were based or that he was deprived in any way of an opportunity to respond.

In these circumstances, there was substantial compliance with § 24–4–104(3), even if the statute is read as respondent urges. *See Colorado Motor Vehicle Dealer Board v. Butterfield, supra* (no violation of § 24–4–104(3) where respondent discussed incident with investigators five months before formal charges were filed, declined to make written statement, did not claim to be unaware of allegations on which formal charges were based, and received notice of hearing containing detailed statement of facts and conduct related to the violations). Thus, respondent is not entitled to relief based on the Board's asserted noncompliance with the statutory notice requirement.

## II.

▮ Respondent next contends that the Board erred in construing § 12–6–118(5)(q) to encompass allegations of theft and conspiracy that were based on conduct involving commerce and motor vehicles. We agree.

▮ In interpreting a statute, a reviewing court must determine and give effect to the intent of the General Assembly. To determine that intent, we look first to the language of the statute, giving effect to each word and phrase and applying the plain and ordinary meaning of the words used. *Avi-Comm, Inc. v. Colorado Public Utilities Commission,* 955 P.2d 1023 (Colo.1998); *Barnes v. Colorado Department of Revenue,* 23 P.3d 1235 (Colo.App.2000).

▮ While an agency's statutory interpretation is entitled to deference, a court is not bound by an agency interpretation that is inconsistent with the clear language of the statute or with legislative intent. *Barnes v. Colorado Department of Revenue, supra.*

### A.

Section 12–6–118(5), C.R.S.2001, provides that the license of a motor vehicle salesperson may be denied, revoked, or suspended on any of various enumerated grounds, including:

(q) Willfully violating any state or federal law respecting commerce or motor vehicles or any lawful rule or regulation respecting commerce or motor vehicles promulgated by any licensing or regulating authority pertaining to motor vehicles.

Respondent was charged with two counts of violating this statute. The first count set forth the statutory language quoted above, followed by the phrase "to wit: § 18–4–401, C.R.S. [2001] theft," followed by the definition of theft in § 18–4–401(1)(a), C.R.S.2001. In support of this charge, it was alleged that respondent had knowingly misappropriated monies belonging to the dealership for which he worked, with the intent to deprive the dealership permanently of those monies.

The second count likewise recited the language of § 12–6–118(5)(q) quoted above, followed by the phrase "to wit: § 18–2–201, C.R.S. [2001] conspiracy," followed by the statutory definition of conspiracy. It was alleged in support of this charge that respondent had conspired with another individual to commit the crime of theft as described in the previous count.

Respondent argued before the Board that the plain language of § 12–6–118(5)(q), which refers to willful violations of laws or regulations "respecting commerce or motor vehicles," contemplates wrongdoing such as odometer tampering or title skipping and does not encompass violations of criminal laws by conduct that merely involves or relates to commerce or motor vehicles. The Board disagreed and found that respondent had violated § 12–6–118(5)(q) as charged.

### B.

We agree with respondent that the Board's interpretation of § 12–6–118(5)(q) is inconsistent with the clear language of the statute.

First, the statute provides that a license may be denied, revoked, or suspended for "willfully violating any ... law respecting commerce or motor vehicles." The theft and conspiracy statutes that respondent allegedly violated are not "law[s] respecting commerce or motor vehicles" and do not become such even if they are violated by conduct involving commerce or motor vehicles. By interpreting the statute to encompass violations of "any ... law *by conduct* respecting commerce or motor vehicles," the Board reads into the statute language that is not there.

Second, the Board's interpretation of the statute renders superfluous the word "willfully" at the beginning of the statute, contrary to the requirement that statutes be construed if possible to give effect to every word. *See Colorado Ground Water Commission v. Eagle Peak Farms, Ltd.*, 919 P.2d 212 (Colo.1996). If § 12–6–118(5)(q) were read to encompass violations of theft and conspiracy statutes, the word "willfully" would be superfluous because those criminal statutes already have a mental state requirement that necessarily excludes conduct that is other than "willful." *See* § 18–4–401(1)(a) ("[a] person commits theft when he knowingly obtains or exercises control over anything of value of another without authorization ... and ... [i]ntends to deprive the other person permanently of the use or benefit of the thing of value"); § 18–2–201(1), C.R.S.2001 ("[a] person commits conspiracy to commit a crime if, with the intent to promote or facilitate its commission, he ...").

Third, § 12–6–118(5)(q) refers not only to laws but to "any lawful rule or regulation respecting commerce or motor vehicles promulgated by any licensing or regulating authority pertaining to motor vehicles." Inclusion of this phrase in the statute further supports a conclusion that the statute was not intended to encompass violations of criminal statutes.

Finally, we note that theft or conspiracy involving commerce or motor vehicles would be grounds for suspension, revocation, or denial of a license under another subsection of § 12–6–118(5), albeit only if the licensee had been convicted of or pled nolo contendere to such crimes. Section 12–6–118(5)(j), C.R.S.2001, provides that a license may be denied, revoked, or suspended if the licensee has "been convicted of or pled nolo contendere to any felony, or any crime pursuant to article 3, 4, or 5 of title 18, C.R.S., or any like crime pursuant to federal law or the law of any other state."

In sum, we conclude that § 12–6–118(5)(q) does not apply to a situation where, as here, the licensee is found to have violated criminal laws but not any law or regulation "respecting commerce or motor vehicles." Accordingly, the sanctions imposed on respondent for violations of this statute cannot stand.

The portion of the Board's order imposing a $10,000 fine and a one-year suspension for violation of § 12–6–118(5)(f) is affirmed. The portion of the Board's order imposing fines of $10,000 and one-year suspensions on the two counts alleging violations of § 12–6–118(5)(q) is reversed.

KAPELKE and CASEBOLT, JJ., concur.