2016 COA 25

**COLORADO DEPARTMENT OF REVENUE, Petitioner–Appellee,**

v.

**ASTRO IMPORTS, INC., License Number 8065, Respondent–Appellant.**

**Court of Appeals No. 14CA1467**

Colorado Court of Appeals, Div. VI.

Announced February 25, 2016

Colorado Motor Vehicle Dealer Board Case No. BD13–1288

Cynthia H. Coffman, Attorney General, Y.E. Scott, Senior Assistant Attorney General, Denver, Colorado, for Petitioner–Appellee.

Michael G. McKinnon, Littleton, Colorado, for Respondent–Appellant.

Opinion by JUDGE FREYRE

¶1 Respondent, Astro Imports, Inc. (Astro), appeals from an order of the Colorado Motor Vehicle Dealer Board (Board) revoking Astro's used motor vehicle dealer license. We affirm.

## I. Background

¶2 Astro was a used car dealership licensed to do business by the Board.

¶3 In August 2013, the Auto Industry Division (AID) of the Petitioner, Department of Revenue, received a fraud complaint from Phil Long Hyundai (Phil Long). The complaint alleged that in 2010 Astro had sold a used car to Phil Long without disclosing that the car had been declared a total loss by an insurance company in 2009. AID initiated an investigation by obtaining and reviewing one

hundred and fifty "deal jackets" [1] pertaining to used cars sold by Astro between June and November, 2013.

¶ 4 All deal jackets contained disclosure documentation, required by section 42–6–205, C.R.S. 2015, of the Certificate of Title Act and by section 6–1–708(1)(b), C.R.S. 2015, of the Colorado Consumer Protection Act, that was provided by the auction house to Astro. These disclosure documents revealed material damage in the vehicles' histories, including unibody/frame, hail, and collision damage. After comparing Astro's sales of seventy vehicles to the deal jackets for those vehicles, the Board's investigator found that Astro had failed to disclose to buyers the damage that had been disclosed to Astro in the deal jackets. Thereafter, the Board charged Astro with one count of violating section 12–6–118(3)(e), C.R.S. 2015 (count I—damaging a buyer through fraud), one count of violating section 12–6–118(3)(i) (count II—willfully misrepresenting or failing to disclose material particulars), and one count of violating section 12–6–118(3)(o) (count III—willfully violating a law respecting commerce or motor vehicles).

¶ 5 After a two-day hearing, the Board found that the testimony and deal jackets of nine buyers supported violations of counts I and II, and that the deal jackets and testimony of those nine buyers and the deal jackets of another thirty-two buyers supported a violation of count III. It then revoked Astro's dealer license.

## II. Standard of Review

¶ 6 Under section 24–4–106(7), C.R.S. 2015, we must set aside an agency action that is arbitrary or capricious, a denial of statutory right, contrary to constitutional right, power, privilege, or immunity, in excess of statutory jurisdiction, authority, purposes, or limitations, not in accord with the procedures or procedural limitations of this article or as otherwise required by law, an abuse or clearly unwarranted exercise of discretion, based upon the findings of fact that are clearly erroneous on the whole record, unsupported by substantial evidence when the record is considered as a whole, or otherwise contrary to law.

*See Lawley v. Dep't of Higher Educ.*, 36 P.3d 1239, 1247 (Colo. 2001). An agency acts arbitrarily or capriciously by (1) neglecting or refusing to use reasonable diligence and care to procure such evidence as it is by law authorized to consider in exercising the discretion vested in it; (2) failing to give candid and honest consideration to evidence before it on which it is authorized to act; or (3) exercising its discretion in such a manner as to indicate clearly that its action is based on conclusions from the evidence which reasonable persons fairly and honestly considering the evidence could not reach. *Id.* at 1252.

¶ 7 Whether the record contains substantial evidence to support the agency's decision is a legal question we review de novo. *Martelon v. Colo. Dep't of Health Care Policy & Fin.*, 124 P.3d 914, 916 (Colo. App. 2005). We examine the record in the light most favorable to the agency's decision. *Colo. Motor Vehicle Licensing Bd. v. Northglenn Dodge, Inc.*, 972 P.2d 707, 714 (Colo. App. 1998).

¶ 8 In determining whether substantial evidence supports the Board's ultimate conclusions of fact, we consider that the party who initiated the proceedings bears the burden of proof. § 24–4–105(7), C.R.S. 2015; *Zamarripa v. Q & T Food Stores, Inc.*, 929 P.2d 1332, 1338, 1340 (Colo. 1997). Evaluating witness credibility and the probative value and weight of the evidence are solely within the fact-finding province of the agency. *Northglenn Dodge*, 972 P.2d at 715.

---

1. A "deal jacket" is a folder maintained by Astro that contains all of the information Astro received from the auction house when it purchased a used vehicle, including documentation of the vehicle's damage history. The deal jacket also contains the sales documents Astro gave to the buyer when selling the used vehicle, including any disclosures related to the vehicle's damage history. *See* IRS Market Segment Specialization Program Guide, Indep. Used Car Dealers (2002), 2002 WL 32770028, at *16 (defining deal jacket and describing its contents); Colo. Dep't of Revenue Reg. 12–6–102(16) (requiring dealers to keep books and records and giving the AID the right to inspect them at will).

III. Defrauding Buyers and Willfully Misrepresenting or Failing to Disclose Material Particulars

¶ 9 Astro contends that because none of the buyers testified that his or her vehicle actually sustained any of the unibody/frame, hail, and collision damage reflected in the disclosure documents, no buyer "suffered damage" under section 12–6–118(3)(e). Astro further argues that there was insufficient evidence to support counts I and II. We disagree.

## A. Defrauding Buyers

¶ 10 In providing for the licensure of motor vehicle manufacturers, distributors, dealers, and salespersons, the General Assembly has stated that its purpose is to protect consumers:

> The licensing and supervision of motor vehicle dealers by the motor vehicle dealer board are necessary for the protection of consumers and therefore the sale of motor vehicles by unlicensed dealers or salespersons, or by licensed dealers or salespersons who have demonstrated unfitness, should be prevented.

§ 12–6–101(1)(c), C.R.S. 2015; *see also Smith v. Colo. Motor Vehicle Dealer Bd.*, 200 P.3d 1115, 1117 (Colo. App. 2008) (purpose of licensure statutes is to protect consumers).

¶ 11 Section 12–6–118(3)(e) provides that a used motor vehicle dealer's license may be revoked for "[d]efrauding any buyer, seller, motor vehicle salesperson, or financial institution to such person's damage." To establish fraud, the evidence must show that (1) a seller made a false representation or failed to disclose a material fact to the purchaser of a motor vehicle; (2) the seller knew the representation was false or that a disclosure should be made; (3) the purchaser did not know that the representation was false or was unaware of the undisclosed facts; (4) the seller's conduct was undertaken with the intent that the purchaser act upon it; and (5) the purchaser was damaged as a result. *Colo. Motor Vehicle Dealer Bd. v. Butterfield*, 9 P.3d 1148, 1152 (Colo. App. 2000).

### 1. Interpreting "Such Person's Damage"

¶ 12 No Colorado cases have further defined "such person's damage" under section 12–6–118(3)(e); therefore, we must interpret this provision according to established principles of statutory construction. Our primary task in construing a statute is to ascertain and give effect to legislative intent. *Colo. Motor Vehicle Dealer Bd. v. Brinker*, 39 P.3d 1269, 1271 (Colo. App. 2001). To determine intent, we first look to the plain language of the statute and construe the words according to their plain and ordinary meanings. *Id.*; *Butterfield*, 9 P.3d at 1152. When the statutory language is clear and unambiguous, there is no need to resort to interpretive rules of statutory construction. *Butterfield*, 9 P.3d at 1152. Moreover, we must read a statute as a whole to determine its meaning. *People v. Dist. Court*, 713 P.2d 918, 921 (Colo. 1986).

### 2. Application

¶ 13 Contrary to Astro's contention, the use of the possessive "person's" to modify "damage" plainly shows that the damage must be suffered by a person. *See Butterfield*, 9 P.3d at 1152 (courts must construe the words of a statute according to their plain and ordinary meaning). Indeed, reading this section in conjunction with section 12–6–101(1)(c), the purpose of which is to protect consumers, leads to the conclusion that the General Assembly was concerned with how the buyer was damaged, economically or otherwise, by the seller's conduct. While vehicle damage may provide one basis for finding that a person suffered damage under the statute, it is not the only way to establish such damage, and proving vehicle damage is not required. Accordingly, we reject Astro's contention that proof of actual vehicle damage was required for the Board's finding of "such person's damage."

### B. Substantial Evidence of Defrauding Buyers and Willful Misrepresentation

¶ 14 We now turn to Astro's contention that the Board's action was arbitrary and capricious because the record lacked substantial evidence to support its findings. "Substantial evidence" is the quantum of pro-

bative evidence that a fact finder would accept as adequate to support a conclusion, without regard to the existence of conflicting evidence. *Black Diamond Fund, LLLP v. Joseph*, 211 P.3d 727, 730 (Colo. App. 2009); *Ward v. Dep't of Nat. Res.*, 216 P.3d 84, 94 (Colo. App. 2008).

¶ 15 Section 12–6–118(3)(i) permits the revocation of a used motor vehicle dealer's license for "[w]illful misrepresentation, circumvention, or concealment of or failure to disclose, through whatsoever subterfuge or device, any of the material particulars or the nature thereof required to be stated or furnished to the buyer." Conduct is "willful" when an actor's actions are deliberate and not inadvertent or accidental. *Northglenn Dodge*, 972 P.2d at 715. "Material particulars" are those details concerning a vehicle for sale "that are essential or necessary for a reasonable prospective buyer to know." *Spedding v. Motor Vehicle Dealer Bd.*, 931 P.2d 480, 486 (Colo. App. 1996).

¶ 16 Astro did not contest the evidence contained in the deal jackets showing that it had properly received notice of damage to the vehicles that it had purchased. And, in several instances, those disclosure forms cited the statute requiring Astro to disclose the vehicle's history upon resale. Yet, numerous buyers testified that Astro failed to disclose the previously sustained damage, failed to provide any disclosure documentation, and, in some cases, affirmatively misrepresented that no previous damage existed. Moreover, numerous deal jackets contained damage disclosure documents received by Astro that were not part of Astro's sales contracts with subsequent buyers.

¶ 17 Indeed, buyers Reed, Bramwell, and Eye testified that they asked Astro whether the cars they purchased had sustained any damage. The deal jackets for all three cars contained a disclosure form showing frame/unibody damage. Astro never provided these disclosures to Reed, Bramwell, or Eye, and it specifically told them there was no damage. Reed, Bramwell, and Eye said they would not have purchased the cars if they had received proper disclosure.

¶ 18 Similarly, buyers Normile and Orrantia testified to having bought used cars from Astro. Astro never disclosed the frame/unibody or hail damage contained in the disclosure forms in the deal jackets for either of their cars. Both witnesses testified that they would not have purchased their cars if they had received proper disclosure.

¶ 19 Additionally, buyers O'Malley and Morrison bought used cars from Astro that had previous extensive repair work and frame damage documented in the deal jackets. Astro never provided these disclosures to the buyers. It told O'Malley the only thing his car needed was new floor mats, and it assured Morrison the car was reliable and had not been in any accidents. Both witnesses testified that they would not have purchased their cars if they had received proper disclosure.

¶ 20 Further, Astro provided buyers Piccone and Withington with Carfax reports for their cars, but never disclosed the frame/unibody damage contained in the disclosure documents in the respective deal jackets. Both Carfax reports identified previous accidents, but neither showed structural damage. Withington testified that he would not have paid the same amount or even purchased his car if he had known of the prior damage. Piccone believed such damage was material and should have been disclosed before the sale.

¶ 21 Finally, the buyers said they felt "fooled," "cheated," "deceived," "defrauded," "lied to," "ripped off," "tricked," and "taken advantage of" by Astro's failure to fully disclose what it knew of the vehicle histories. They said Astro's actions not only had reduced their vehicles' resale value, but also caused them to pay more than they would have if they had received full disclosure.

¶ 22 We conclude there was substantial and sufficient evidence to support the Board's findings that Astro defrauded its customers by failing to disclose material particulars, i.e. previous damage, as part of the sales contracts. Substantial evidence also shows that Astro affirmatively misrepresented the condition of many vehicles and that Astro's conduct in all instances was intended to induce the buyers to purchase their cars. Moreover, the buyers' testimony that they

would have paid less or not purchased the cars if they had received proper disclosure supports the Board's finding that the buyers suffered damage from Astro's conduct. Finally, contrary to Astro's argument, the purchase price of the vehicles contained in the deal jackets, coupled with the buyers' testimony that with proper disclosure, they would not have purchased the cars or would have paid less for them, constituted evidence of monetary damage.

¶ 23 We acknowledge that Astro presented contradictory evidence through three witnesses who had received proper disclosures, conducted their own inspections before buying the cars, and said the inspections revealed no damage. However, in our view, this evidence strengthens the Board's conclusions, because it shows that Astro knew of its disclosure obligations and was capable of following them, thereby making Astro's conduct in the other cases willful. The fact that these three witnesses suffered no damages as part of their dealings with Astro does not diminish the damages suffered by those who did not receive comparable treatment from Astro.

¶ 24 Accordingly, we affirm the Board's findings on counts I and II.

## IV. Deceptive Trade Practices

¶ 25 Astro next contends that the Board's action was arbitrary and capricious because the record lacks substantial evidence that Astro failed to disclose material damage in writing to its customers in violation of section 6–1–708(1)(b), a state law respecting motor vehicles. It further argues that "material damage" means the actual existence of vehicle damage and a diminished value therefrom.[2] We disagree.

■ ¶ 26 As relevant here, section 12–6–118(3)(o) permits revocation of a used motor vehicle dealer's license for "[w]illfully violat[ing] any state or federal law respecting

commerce or motor vehicles...." The state law violation charged and found was section 6–1–708(1)(b), which provides:

(1) A person engages in a deceptive trade practice when, in the course of such person's business, vocation, or occupation, such person:

....

(b) ... knowingly fails to disclose in writing, prior to sale, to the purchaser that a motor vehicle has sustained material damage at any one time from any one incident.

¶ 27 The Board defined material damage as damage resulting from an accident, structural (frame/unibody) damage, or hail damage that reduces the value of a motor vehicle and is pertinent or essential in deciding whether to purchase and what to pay for that vehicle. Astro does not challenge this definition on appeal.

¶ 28 Based on the hearing evidence set forth in Part III.B, we conclude that substantial record evidence shows that Astro failed to provide written disclosures of previous damage before selling used cars to its customers. Importantly, the statute's language is expansive, including damage "at any one time from any one incident." § 6–1–708(1)(b). Thus, the absence of actual damage at the time of Astro's sale to the buyer is irrelevant because the disclosure documents show that damage existed previously.

¶ 29 Moreover, while no evidence of specific vehicle value was produced at the hearing, we conclude that the witnesses' testimony that they would have paid less or not purchased their vehicles sufficiently established diminished value. As the Board noted, "[n]o seller of a motor vehicle would disclose nonexistent damages that [would] lower the price [he or she] [could] receive for the vehicle."

¶ 30 Finally, the disclosure documents containing citations to the relevant law, and the

---

2. Astro challenged the constitutionality of the phrase "material damage" at the hearing, but does not raise this issue on appeal. Therefore, that issue is waived and we do not address it here. *Moody v. People,* 159 P.3d 611, 614 (Colo. 2007) ("[A]rguments not advanced on appeal are generally deemed waived.").

testimony of Astro's three witnesses, to whom proper disclosers were given, show that Astro knew of its legal duty to disclose the previous damage upon resale and therefore, establish that its conduct was willful. Accordingly, substantial evidence supported the Board's finding that Astro engaged in deceptive trade practices; and we must defer to that finding.

## V. Conclusion

¶ 31 The order of the Board is affirmed.

JUDGE TERRY and JUDGE NAVARRO concur.